**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MONARCH NETWORKING<br>SOLUTIONS LLC,<br><br>          Plaintiff,<br><br>   v.<br><br>CISCO SYSTEMS, INC.;<br>CHARTER COMMUNICATIONS, INC.,<br><br>         Defendants. | Civil Action No. 2:20-CV-00015-JRG<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANTS' MOTION TO STAY PENDING PROCEEDING TO DECIDE OWNERSHIP OF THE ASSERTED PATENTS

## TABLE OF CONTENTS

**Pages**

I.     INTRODUCTION ...................................................................................................1

II.    ISSUE TO BE DECIDED ........................................................................................2

III.   STATEMENT OF RELEVANT FACTS AND ALLEGATIONS....................................2

IV.   LEGAL STANDARDS ............................................................................................7

      A.    Staying Proceedings.................................................................................7

      B.    Patent Owner Standing ............................................................................7

V.    ARGUMENT.........................................................................................................8

      A.    A Stay Will Not Unduly Prejudice Monarch Or Provide Defendants With A Tactical Advantage. ............................................................................8

      B.    The Delaware Action Can Simplify Every Issue In This Case By Determining That Monarch Has No Standing To Bring Suit. ..............................10

      C.    Discovery Has Not Yet Begun And No Trial Date Has Been Set. ........................11

VI.   CONCLUSION....................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

<u>Cases</u>

*Abraxis Bioscience, Inc. v. Navita LLC*,
　　625 F.3d 1359 (Fed. Cir. 2010)................................................................................. 7, 11

*EchoStar Techs. Corp. v. TiVo, Inc.*,
　　No. 5:05-CV-81, 2006 WL 2501494 (E.D. Tex. July 14, 2006) ...................................... 7

*Epistar Corp. v. Int'l Trade Comm'n*,
　　566 F.3d 1321 (Fed. Cir. 2009)..................................................................................... 10

*H.R. Techs., Inc. v. Astechnologies, Inc.*,
　　275 F.3d 1378 (Fed. Cir. 2002)................................................................................. 7, 11

*Landis v. N. Am. Co.*,
　　299 U.S. 248 (1936)......................................................................................................... 7

*NFC Tech. LLC v. HTC Am., Inc.*,
　　No. 2:13-CV-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) .................................. 9

*Norman IP Holdings, LLC v. Chrysler Grp. LLC*,
　　No. 6:13-CV-278, 2014 WL 12613264 (E.D. Tex. Oct. 8, 2014) ................................... 12

*Optimal Golf Sols., Inc. v. Altex Corp., et. al.*,
　　No. 3:09-CV-1403, 2009 WL 10733424 (N.D. Tex. Sept. 30, 2009) ......................... 1, 11

*Paradise Creations, Inc. v. UV Sales, Inc.*,
　　315 F.3d 1304 (Fed. Cir. 2003)........................................................................................ 7

*Premier Int'l Assocs. LLC v. Hewlett-Packard Co.*,
　　554 F. Supp. 2d 717 (E.D. Tex. 2008) ........................................................................... 12

*Rmail Ltd. v. Amazon.com, Inc.*,
　　No. 2:10-CV-258, 2014 WL 11394910 (E.D. Tex. Jan. 30, 2014).................... 1, 8, 11, 12

*RPost Holdings, Inc. v. Exacttarget, Inc.*,
　　No. 2:12-CV-512, 2014 WL 12703780 (E.D. Tex. Sept. 29, 2014)...................... 1, 10, 11

*Southwire Co. v. Cerro Wire, Inc.*,
　　750 F. Supp. 2d 775 (E.D. Tex. 2010) ........................................................................... 12

*Soverain Software LLC v. Amazon, Inc.*,
　　356 F. Supp. 2d 660 (E.D. Tex. 2005) .................................................................. passim

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*Spa Syspatronic, AG v. Verifone, Inc.*,
    No. 2:07-CV-416, 2008 WL 1886020 (E.D. Tex. Apr. 25, 2008)..................................... 9

*STC.UNM v. Intel Corp.*,
    754 F.3d 940 (Fed. Cir. 2014).......................................................................................... 11

*Ventress v. Smith*,
    35 U.S. 161 (1836).......................................................................................................... 10

## **Rules**

Fed. R. Civ. P. 7.1 .................................................................................................................. 3

Defendants Cisco Systems, Inc. and Charter Communications, Inc. (collectively, "Defendants") respectfully move the Court to stay this case pending a related action, Delaware Chancery case *Slingshot Techs. v. Acacia Research Corp., et. al.*, No. 2019-0722 (the "Delaware Action"), determining whether Plaintiff Monarch Networking Solutions LLC ("Monarch") owns U.S. Patent Nos. 8,451,844; 8,451,845; 9,019,965; and 8,130,775 (the "Asserted Patents").

## I.    INTRODUCTION

As Monarch acknowledges in its Complaint, Monarch's alleged ownership of all of the Asserted Patents is an open question that is subject to litigation in Delaware.  (D.I. 1 ¶ 6.)  The Delaware Action seeks to rescind the sale of the Asserted Patents to Acacia Research Group, LLC ("Acacia"), a Monarch-related entity that Monarch asserts is its predecessor-in-interest.  (*Id.*)  Accordingly, if successful, the Delaware Action would divest Monarch of standing to continue this lawsuit because its predecessor-in-interest will be found to have ***never owned the Asserted Patents in the first place***.  The Court should stay this case pending the outcome of the Delaware Action instead of marching forward on a matter that could be mooted in its entirety at any moment by the co-pending Delaware Action.  Indeed, courts in this district routinely grant stays pending collateral attacks on patent ownership.  *See, e.g.*, *Rmail Ltd. v. Amazon.com, Inc.*, No. 2:10-CV-258, 2014 WL 11394910 (E.D. Tex. Jan. 30, 2014); *RPost Holdings, Inc. v. Exacttarget, Inc.*, No. 2:12-CV-512, 2014 WL 12703780 (E.D. Tex. Sept. 29, 2014); *Optimal Golf Sols., Inc. v. Altex Corp., et. al.*, No. 3:09-CV-1403, 2009 WL 10733424 (N.D. Tex. Sept. 30, 2009).

Here, all three *Soverain* factors support a stay.  *Soverain Software LLC v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).  *First*, Monarch cannot credibly claim undue prejudice. Monarch knew of the Delaware Action ***before*** filing suit, but assumed all associated risks in racing to file this case.  A stay would not unduly prejudice Monarch because Monarch does not seek equitable relief here and the imposition of a stay would not have any effect on any alleged

reasonable royalty.  Nor does Monarch compete with Defendants.  *Second*, the Delaware Action can more than simplify this case; it can eliminate this case in its entirety.  Absent proper ownership of the Asserted Patents, Monarch lacks standing to sue for infringement, which would require this Court to dismiss this case in its entirety.  Because the Delaware Action threatens to moot this case entirely, it defies reason to waste resources on this lawsuit under the Delaware Action's looming shadow.  *Third*, the procedural posture of this case heavily favors a stay.  This case is in its infancy, and Defendants diligently moved for a stay at the earliest possible juncture—before the scheduling conference, start of discovery, and selection of a trial date.

In short, the Court should stay this case pending the outcome of the Delaware Action, instead of wasting judicial and party resources on a case that may be moot.

## II.      ISSUE TO BE DECIDED

Whether the Court should stay this case, pending the resolution of an earlier-filed co-pending proceeding to determine whether Plaintiff owns the Asserted Patents, where:  Plaintiff knew of the co-pending proceeding before bringing suit against Defendants; Plaintiff does not compete with Defendants; Plaintiff seeks only monetary relief; the co-pending proceeding could render this lawsuit moot; and this case is in its infancy.

## III.     STATEMENT OF RELEVANT FACTS AND ALLEGATIONS

Monarch accuses Defendants of infringing four United States patents:  U.S. Patent Nos. 8,451,844; 8,451,845; 9,019,965; and 8,130,775.  (D.I. 1 ¶ 1.)  Although Monarch generally alleges that it "is the owner of all right, title, and interest" in the Asserted Patents (*id*. ¶¶ 19, 23, 26, 29), Monarch acknowledges that its ownership is subject to dispute in a previously filed Delaware Chancery Court case.  (*Id*. ¶ 6.)  Monarch also concedes that if Plaintiff is successful, then Monarch's ownership of the Asserted Patents will no longer be "intact":

> On September 6, 2019, **_Slingshot Technologies, LLC, filed a_**
> **_complaint in Delaware Chancery Court seeking to rescind the_**
> **_sales transaction that led to Acacia's (and subsequently_**
> **_Monarch's) acquisition of the Asserted Patents._** Acacia vigorously
> denies the allegations in the Slingshot lawsuit, and **_Monarch's_**
> **_ownership of the patents is intact until such point, if ever, that_**
> **_Slingshot succeeds on the merits of its lawsuit_**. Nevertheless, out
> of an abundance of caution, Monarch herein discloses the existence
> of that lawsuit.

(*Id*. (emphasis added).)  The Asserted Patents indicate on their faces that they were originally

assigned to France Télécom S.A., now known as Orange S.A. (Exs. 1–4[1], Asserted Patents), and

Monarch has not alleged specific facts, attached any exhibits, or produced any documents,

supporting its allegation that it owns the Asserted Patents.

According to the USPTO's public website, the Asserted Patents were assigned on the

following dates:

- September 21, 2017—assigned from Orange S.A. to Transpacific IP Group Limited

  ("Transpacific IP");

- March 29, 2019—assigned from Transpacific IP to Acacia; and

- November 18, 2019—assigned from Acacia to Monarch.[2]  *See* Exs. 5–8,

  https://portal.uspto.gov/pair/PublicPair (last accessed March 31, 2020).

As Monarch readily acknowledges, the March 29, 2019 assignment is currently being

litigated in Delaware.  (D.I. 1 ¶ 6.)  On September 6, 2019, Slingshot Technologies, LLC

("Slingshot") filed the Delaware Action alleging that Acacia's acquisition of the Asserted Patents

should be rescinded.  (*See* Ex. 10, Slingshot's Original Complaint, at 47.)  On December 3, 2019,

---

[1] All citations to exhibits refer to the attachments to the declaration of Michael R. Rhodes.
[2] Although Monarch did not file a disclosure statement pursuant to Fed. R. Civ. P. 7.1, as required, based upon publicly available information, Monarch appears to be either a subsidiary or alter ego of Acacia.  (*See, e.g.*, Ex. 9, https://www.corporationwiki.com/p/35hv70/monarch-networking-solutions-llc (last accessed March 31, 2020).)

Slingshot served an amended complaint with additional supporting facts.  (*See generally*, Ex. 11, Slingshot's Amended Complaint.)

**Slingshot alleges the following relevant facts:**

- Transpacific IP owned a patent portfolio known as the "Orange Patent Portfolio." [3] (Ex. 11, Slingshot's Amended Complaint, ¶¶ 1–2, 28.)

- On or about September 17, 2018, Transpacific IP and Slingshot entered into the Transpacific Purchase Agreement, an exclusive agreement allowing Slingshot to acquire the Orange Patent Portfolio.  (*Id.*, ¶¶ 29–32.)  The Transpacific Purchase Agreement originally included a 45-day exclusive period:

  > [Slingshot] shall have the sole and exclusive right, but not an obligation . . . to purchase the Patents on the terms and conditions specified herein. The Exclusive Option shall expire 45 days from the Effective Date.

  (*Id.* ¶ 31; Ex. 12, Transpacific Purchase Agreement, ¶ 3.1.)  The agreement also provided that Transpacific IP would not sell the Orange Patent Portfolio to anyone that Slingshot introduced to Transpacific IP for one year after the exclusive period expired:

  > In the event that Purchaser does not purchase the Patents from Seller, Seller agrees not to enter into any sale transaction regarding the Patents with any funding source introduced to Seller by the Purchaser for a period of one year following the expiration of the Exclusive Option period.

  (Ex. 11, Slingshot's Amended Complaint, ¶ 32; Ex. 12, Transpacific Purchase Agreement, ¶ 6.5.)

---

[3] The Orange Patent Portfolio includes all of the Asserted Patents.  (D.I. 1 ¶ 6; Exs. 5–8, https://portal.uspto.gov/pair/PublicPair (last accessed March 31, 2020).)

- Transpacific IP extended the 45-day-exclusivity period multiple times in exchange for paid consideration.  (Ex. 11, Slingshot's Amended Complaint, ¶ 33.)  On October 18, 2018, Transpacific IP and Slingshot entered into an Amendment to the Transpacific Purchase Agreement which explicitly extended the exclusivity period through December 3, 2018.  (Ex. 13, Amendment To Transpacific Purchase Agreement, ¶ 3.1.)  Then, on January 1, 2019, Transpacific IP again extended the exclusive period to January 30, 2019.  (Ex. 11, Slingshot's Amended Complaint, ¶ 55.) Thus, Transpacific IP was contractually obligated not to sell its patent portfolio to any party introduced to it by Slingshot until at least January 30, 2020, one year after the extended exclusivity period expired.  (*Id*.; Ex. 12, Transpacific Purchase Agreement, ¶ 6.5.)

- During the exclusivity period, Slingshot introduced Transpacific IP to Katharine Wolanyk, the managing director of Burford Capital LLC.  (Ex. 11, Slingshot's Amended Complaint, ¶¶ 43–52.)  Ms. Wolanyk joined the board of directors of Slingshot's main rival, Acacia Research Corporation.[4]  (*Id*. ¶¶ 56–71.)  While leading Slingshot's main rival, Ms. Wolanyk still had access to Slingshot's Orange-Patent-Portfolio-related confidential information by continuing to manage Burford Capital LLC.  (*Id*. ¶¶ 56–71.)

- On February 28, 2019, about one month after Ms. Wolanyk joined the board of directors of Acacia Research Corporation, Transpacific IP sold the Orange Patent Portfolio to Acacia. (Ex. 11, Slingshot's Amended Complaint, ¶¶ 69–81.)  The sale

---

[4] According to the amended complaint, Acacia Research Corporation has control over Acacia Research Group and directed it to purchase the Orange Patent Portfolio.  (*Id*. ¶¶ 82-85.)

occurred before Transpacific IP was allowed to sell the Orange Patent Portfolio to individuals brought to Transpacific IP by Slingshot.  (*Id*. ¶¶ 73, 87–95.)  Slingshot was ready, willing, and able to purchase the Orange Patent Portfolio at that time. (*Id*. ¶ 86.)

- In addition, on December 8, 2018, Transpacific IP and Slingshot entered into a second agreement.  (Ex. 11, Slingshot's Amended Complaint, ¶ 37; Ex. 14, Transpacific IP Services Agreement.)  The second agreement (referred to as the "Transpacific IP Services Agreement") explicitly gave Slingshot an interest in part of the Orange Patent Portfolio in exchange for various services.  (Ex. 11, Slingshot's Amended Complaint, ¶¶ 37–42.)

- Slingshot performed the services outlined in the Transpacific IP Services Agreement through July 21, 2019 and accordingly received an interest in the Orange Patent Portfolio.  (Ex. 11, Slingshot's Amended Complaint, ¶¶ 37–42.)

Thus, if Slingshot's allegations are proven true, the Transpacific Purchase Agreement barred its sale of the Asserted Patents to Acacia, the Delaware Court will rescind Acacia's acquisition of the Asserted Patents, and Monarch will not own any of the Asserted Patents.  (Ex. 11, Slingshot's Amended Complaint, at 62–63.)  Even if the Transpacific Purchase Agreement does not result in complete ownership loss by Monarch, the Transpacific IP Services Agreement may provide Slingshot with partial ownership rights in the Asserted Patents.

Monarch filed this case on January 21, 2020.  (D.I. 1.)  Defendants in this action are answering Monarch's Complaint today, on March 31, 2020.  No scheduling conference has occurred, discovery has not yet commenced, no *Markman* hearing has been calendared, and no trial date has been set.

## IV.    LEGAL STANDARDS

### A.    Staying Proceedings

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254–255 (1936) (citations omitted).  "The district court has the inherent power to control its own docket, including the power to stay proceedings."  *Soverain,* 356 F. Supp. 2d at 662 (citations omitted).  District courts typically weigh three factors when deciding whether to grant a stay:  "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set."  *Id.*  (the "*Soverain* factors").  "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on these factors."  *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-CV-81, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006).

### B.    Patent Owner Standing

"In order to have standing, the plaintiff in an action for patent infringement must be a patentee pursuant to 35 U.S.C. §§ 100(d) and 281, or a licensee who holds all substantial rights in the patent."  *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002) (citations omitted).  "[T]he plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit."  *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (citation omitted).  "If the original plaintiff lacked Article III initial standing . . . the jurisdictional defect cannot be cured after the inception of the lawsuit."  *Abraxis Bioscience, Inc. v. Navita LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010).

## V.     ARGUMENT

All three *Soverain* factors favor a stay.  *First*, a stay pending the Delaware Action—a risk known to Monarch before it filed suit—will not unduly prejudice plaintiff where the parties do not compete, plaintiff seeks only monetary damages, and a stay presents no tactical advantage to Defendants.  *Second*, the Delaware Action can simplify every issue in this case by depriving Monarch of standing, and rendering this case moot.  *Third*, Defendants diligently moved for a stay at the case's inception—before a scheduling conference, the start of discovery, or a trial date has been set.

### A.     A Stay Will Not Unduly Prejudice Monarch Or Provide Defendants With A Tactical Advantage.

Monarch faces no undue prejudice here.  Monarch knew of the Delaware Action and assumed the risk of a stay when it filed its complaint.  Indeed, Monarch's complaint explicitly acknowledges that the Delaware Action can deprive it of ownership of the Asserted Patents:

> On September 6, 2019, *Slingshot Technologies, LLC, filed a complaint in Delaware Chancery Court seeking to rescind the sales transaction that led to Acacia's (and subsequently Monarch's) acquisition of the Asserted Patents.* Acacia vigorously denies the allegations in the Slingshot lawsuit, and *Monarch's ownership of the patents is intact until such point, if ever, that Slingshot succeeds on the merits of its lawsuit.* Nevertheless, out of an abundance of caution, Monarch herein discloses the existence of that lawsuit.

(D.I. 1 ¶ 6.)  But instead of waiting for the Delaware Action to determine whether it owns the Asserted Patents, Monarch raced to the Court and filed the present action.  Stays cause no undue prejudice when the plaintiff knew of a challenge to its patent ownership before filing suit.  *See, e.g.*, *Rmail*, 2014 WL 11394910, at *6 (finding that plaintiff was not prejudiced by a stay when it was "fully aware of the co-pending California cases . . . [and] the serious implications those cases would have on the issue of patent ownership in the present actions").

8

Additionally, any alleged prejudice resulting from a stay does not rise to the level of ***undue*** prejudice.    Monarch    was    formed    in    October    2019.    (*See*    Ex.    9, https://www.corporationwiki.com/p/35hv70/monarch-networking-solutions-llc    (last    accessed March 31, 2020).)  Monarch does not sell any products or otherwise compete with either defendant. *See, e.g.*, *Spa Syspatronic, AG v. Verifone, Inc.*, No. 2:07-CV-416, 2008 WL 1886020, at *2 (E.D. Tex. Apr. 25, 2008) (granting stay and finding that non-competitor status and inability to seek an injunction weighed against patent owner's claim of undue prejudice).   To date, Monarch has no website or LinkedIn page, and does not appear to have any real-world presence.   Tellingly, Monarch seeks only monetary damages, and no injunction or equitable relief.   (D.I. 1, at 53–54.) *See, e.g.*, *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *2–3 (E.D. Tex. Mar. 11, 2015) (granting stay and finding patent owner not prejudiced where "it does not compete with [defendant] and that monetary relief will be sufficient to compensate it for any injury to its patent rights").   And Monarch's interest in its alleged patent rights alone is insufficient to demonstrate ***undue*** prejudice.   The inherent delay in granting a stay "is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion." *NFC Tech.*, 2015 WL 1069111, at *2.

In light of the Delaware Action, Monarch may not own the Asserted Patents.   Monarch cannot credibly claim to suffer undue prejudice from a delay in asserting rights that it may never have had in the first place.   Indeed, staying the case would more likely ***prevent*** Monarch from suffering prejudice.   Monarch's complaint accuses two defendants of infringing four patents based upon more than fifty accused products, where multiple parties claim to own the Asserted Patents. (D.I. 1 ¶¶ 1–3, 6, 34–42.)  Given the case complexity, Monarch could spend millions of dollars litigating its claims, and then the Delaware Action could completely wipe out Monarch's standing,

prejudicing Monarch.  *See, e.g.*, *RPost Holdings*, 2014 WL 12703780, at *3 (granting stay and finding that looming "litigation involving a patent with underlying issues of unresolved ownership" could create undue prejudice).  Thus, Monarch more likely faces prejudice if the Court ***does not*** stay this case.

A stay pending the Delaware Action does not offer any tactical advantage to Defendants. Today, Defendants also filed their answers to Monarch's complaint.  Defendants seek no stay on their obligations to answer.  The timing of Defendants' motion is not tactical in any way.  Instead, Defendants filed this motion immediately with its answer at the outset of this case.

In short, granting a stay will not cause Monarch to suffer undue prejudice and will not provide Defendants with a tactical advantage.  Accordingly, the first *Soverain* factor weighs heavily towards a stay.

### B.    The Delaware Action Can Simplify Every Issue In This Case By Determining That Monarch Has No Standing To Bring Suit.

The Delaware Action can moot this case in its entirety.  Monarch allegedly obtained all of the Asserted Patents from its parent company Acacia.  (D.I. 1 ¶ 6.)  But, as credibly alleged in the Delaware Action, Acacia never legally owned any of Asserted Patents in the first place.  Because *nemo plus juris in alium transferre potest, quam ipse habet*—no one can transfer to another any greater right than he himself has—Acacia could not legally assign the Asserted Patents to Monarch.  *See Ventress v. Smith*, 35 U.S. 161, 175–76 (1836).  In other words, Acacia could never have assigned rights in the Asserted Patents to Monarch, because ***Acacia never possessed those rights***.  *See, e.g.*, *Epistar Corp. v. Int'l Trade Comm'n*, 566 F.3d 1321, 1333–34 (Fed. Cir. 2009) ("[T]he assignee step[s] into the shoes of the assignor with regard to the rights that the assignor held and *not in an expansion of those rights to include those held by the assignee*.") (citation omitted) (emphasis in original).

10

Thus, if Slingshot is successful in Delaware, Monarch does not own any of the Asserted Patents and lacks standing to sue.  *See, e.g., H.R. Techs.*, 275 F.3d at 1384.  Even if Slingshot only obtained a partial interest in the Asserted Patents, Monarch's failure to include Slingshot as a party may also defeat standing.  *See, e.g.*, *STC.UNM v. Intel Corp.*, 754 F.3d 940, 944 (Fed. Cir. 2014) ("[A] patent co-owner seeking to maintain an infringement suit must join all other co[-]owners.") (citations omitted).  And, these standing defects cannot be cured later in the case.  *Abraxis*, 625 F.3d at 1364.  In short, the Delaware Action may render this lawsuit moot by creating an incurable defect in standing.  At minimum, a stay will shed light on one of the key issues before this Court: ownership of the Asserted Patents.

If the Delaware Action deprives Monarch of standing, any resources expended by the Court and the parties will be completely wasted.  For that reason, courts routinely grant stays for co-pending actions challenging the ownership of asserted patents.  *See, e.g.*, *Rmail*, 2014 WL 11394910, at *6 (granting stay pending related fraud and bankruptcy actions calling into question ownership of the asserted patents); *RPost Holdings*, 2014 WL 12703780, at *3 (same); *Optimal Golf Sols.*, 2009 WL 10733424, at *1 (granting stay pending bankruptcy proceeding calling into question ownership of asserted patents).

In short, the Delaware Action's potential to eliminate this entire case strongly supports granting a stay.

### C.     Discovery Has Not Yet Begun And No Trial Date Has Been Set.

This case has just begun.  Monarch filed its complaint on January 21, 2020, and Defendants answered today.  The parties have not yet begun discovery, no scheduling conference has been ordered, no *Markman* date has been determined, and no trial date has been set.  Neither the Court, nor the parties, have expended significant resources on this case.  Defendants diligently moved for a stay at the earliest possible juncture.  In such circumstances, the procedural posture weighs

heavily in favor of a stay.  *See, e.g.*, *Premier Int'l Assocs. LLC v. Hewlett-Packard Co.*, 554 F. Supp. 2d 717, 724 (E.D. Tex. 2008) (granting stay when "[t]he scheduling conference was recently held, no discovery has been initiated, and this case was set for a jury trial in" about two years); *Southwire Co. v. Cerro Wire, Inc.*, 750 F. Supp. 2d 775, 779–80 (E.D. Tex. 2010) (granting stay when "the *Markman* hearing has not occurred, expert reports have not been exchanged, discovery is not completed, summary judgment motions have not been filed, and the Court has not begun its claim construction"); *Norman IP Holdings, LLC v. Chrysler Grp. LLC*, No. 6:13-CV-278, 2014 WL 12613264, at *3 (E.D. Tex. Oct. 8, 2014) (granting stay when "[t]he present litigation began over a year ago, the parties' claim construction positions have been submitted, *Markman* hearing was held … and a trial date has been set").  Indeed, when a related judicial action can wholly deprive the Plaintiff of standing, like here, courts have even stayed cases "on the cusp of trial." *See, e.g.*, *Rmail*, 2014 WL 11394910, at *6.

      Thus, the early procedural posture strongly favors a stay.

## VI.    CONCLUSION

      Defendants respectfully requests that this Court grant a stay until final judgment is reached in the Delaware Action.

Dated: March 31, 2020

By:  /s/ Tamir Packin with permission
 by Michael E. Jones
Tamir Packin (*pro hac vice*)
tpackin@desmaraisllp.com
Jennifer Przybylski (*pro hac vice*)
jprzybylski@desmaraisllp.com
Raymond Habbaz (*pro hac vice*)
rhabbaz@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel:  (212) 351-3400
Fax:  (212) 351-3401

Michael R. Rhodes (*pro hac vice*)
mrhodes@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

*Lead Counsel for Defendants
CISCO SYSTEMS, INC. and CHARTER
COMMUNICATIONS, INC.*

Michael E. Jones (State Bar No. 10929400)
mikejones@potterminton.com
POTTER MINTON, P.C.
110 North College, Suite 500
Tyler, Texas 75702
Tel:  (903) 597-8311
Fax:  (903) 593-0846

*Local Counsel for Defendants
CISCO SYSTEMS, INC. and CHARTER
COMMUNICATIONS, INC.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 31, 2020.

/s/ Mike E. Jones
Michael E. Jones

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel for movant has conferred with opposing counsel in a good faith attempt to resolve the matter without court interference, and this motion is opposed.  More specifically, counsel met and conferred on Friday, March 13, 2020 for approximately one hour telephonically.  Joseph S. Grinstein represented plaintiff Monarch.  Tamir Packin and Michael R. Rhodes represented defendants Cisco and Charter.

/s/ Michael R. Rhodes
Michael R. Rhodes