**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MONARCH NETWORKING SOLUTIONS LLC, | § § § | |
| Plaintiff, | § § § | |
| v. | § | Case No. 2:20-CV-00015-JRG |
| CISCO SYSTEMS, INC.; CHARTER COMMUNICATIONS, INC., | | |
| Defendants. | | |

**E-DISCOVERY ORDER**

Upon the stipulation of the parties, the Court ORDERS as follows:

1.  This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2.  This Order may be modified for good cause. The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 conference. If the parties cannot resolve their disputes regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute.

3.  A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

4.  General ESI production requests under Federal Rules of Civil Procedure 34 and 45 or compliance with a mandatory disclosure requirement of this Court shall not include metadata absent a showing of good cause. However, fields showing the date and time that the document was sent and received, as well as the complete distribution list, shall generally be included in the production.

- 2 -

5. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 or compliance with a mandatory disclosure requirement of this Court, shall not include email. To obtain email, parties propound specific email production requests.

6. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

7. No later than the date for exchanging Patent Local Rule 3-4 disclosures each party shall produce organizational information for each employee or former employee of that party identified in that party's Rule 26(a) disclosures, specifying the following information: job title; persons they oversee or manage; persons to whom they report; and, to the extent it is kept in the ordinary course of business, a brief summary of job responsibilities.

8. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case. Each requesting party may also propound written discovery to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests (such discovery shall count against the discovery limits specified in the Discovery Order). The court may allow additional discovery upon a showing of good cause.

9. If a party determines that the discovery obtained in Paragraphs 7 and 8 is not sufficient to identify initial custodians in accordance with Paragraph 11, that party can propound one or more 30(b)(6) notice(s) specifying the topics for additional discovery to identify the proper custodians, proper search terms, and proper time frame for e-mail production requests. The parties will promptly meet and confer. If the parties agree to a deposition, or if the Court orders a deposition, the requesting party may take up to one four-hour deposition per producing party (such discovery shall <u>not</u> count against the discovery limits specified in the Discovery Order).

10. Email production requests shall identify the custodian, search terms, and timeframe. The parties shall cooperate to identify the proper custodians, proper search terms, and proper timeframe.

11. Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five additional custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case. Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

12. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search time. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word, even if the disjunctive combination follows a conjunctive operator. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

13. Except as expressly provided in this Order, each party's obligation to produce documents, electronically stored information, and tangible things shall be governed by applicable Federal Rules (*e.g.*, Fed. R. Civ. P. 26), Local Rules (*e.g.*, LR CV-26) and the Court's Discovery Order. This production obligation applies regardless of the form in which the documents, electronically stored information, and tangible things are stored (*e.g.*, that fact that a document is stored or maintained exclusively in a non-tangible electronic form shall not constitute a basis to withhold or delay production of that document).

**General Document Production Format**

14. Absent agreement of the parties or further order of this court, the following parameters shall apply to ESI production:

    a. **General Document Image Format**. Each electronic document shall be produced in native or single-page Tagged Image File ("TIFF") format. TIFF files shall be single page and shall be named with a unique production number followed by the appropriate file extension. Load files shall be provided to indicate the location and unitization of the TIFF files. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

    b. **Text-Searchable Documents**. No party has an obligation to make its production text-searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party.

    c. **Footer**. Each document image produced in TIFF format shall contain a footer with a sequentially ascending production number. Documents produced in native format shall be numbered according to paragraph 13(d).

d. **Native Files**. A party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party shall produce the document in its native format. Native files shall be designated by including a unique production number and appropriate confidentiality designation in the native document's file name. Documents produced in native format shall be accompanied by a directory, load file, or Bates number linking file in .csv format, or if such format is not practicable, in another commonly used directory/load file format such as /dii, .opt, .dat, or .lfp. To the extent that a party intends to use a document produced in native format for depositions, pleadings, trial, or for any other purpose where the identification of individual pages is necessary, that party must either sequentially number the individual pages of the document and include the appropriate confidentiality designation or append a cover sheet to the document that includes the bates number and the appropriate confidentiality designation. For example, with respect to information produced in native format and marked with the Bates number "227543," a party wishing to use that document may number the individual pages as "227543.1; 22754.2; . . . ."

e. **No Backup Restoration Required**. Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery obligations in the present case.

f. **Voicemail and Mobile Devices**. Absent a showing of good cause, voicemails, PDAs, and mobile phones are deemed not reasonably accessible and need not be collected and preserved.

15. Unless otherwise agreed, the parties shall provide document productions in the following manner: the producing party shall provide the production data on CDs, DVDs, external hard

drives, or via FTP or email as appropriate ("Production Media"). If the producing party so desires, it can encrypt the Production Media using an industry acceptable encryption method. In such a case, the producing party may forward the password to decrypt the production data separately from the CD, DVD, or external drive on which the production data is saved. Each piece of Production Media shall identify a production number corresponding to the production volume (*e.g.*, "VOL001," "VOL002"). Each piece of production media shall also identify: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) whether the media contains Protected Material under the protective order in this case.

16. Consistent with the foregoing, the parties shall make reasonable efforts to provide data in accordance with the following technical requirements, to the extent applicable:

   a. DAT file (using Concordance delimiters) containing Bates, metadata, OCR and Native path information. Standard fields include: ProdBegNo, ProdEndNo, BegAttach, EndAttach, Email Sent Date, Doc Creation Date, Doc Modified Date, DocType, PGCount, Custodian, Author, Recipient(s), CC, BCC, Subject, Doc Title, File Extension, File Size, File Name, Hash Value, Native Link Path, and OCR Link Path
   b. Single-page TIFF images (named after Bates numbers)
   c. Document level OCR text files (named after document Begin Bates numbers)
   d. OPT and/or LFP load file
   e. The production volume subfolders should be organized as follows:
      i. Data folder containing the DAT and OPT/LFP files
      ii. OCR folder containing the OCR text files
      iii. Images folder containing the TIFF images
      iv. Native folder for native files.

**Communication with Experts**

17. Drafts of reports, declarations, or affidavits prepared by an expert who may give testimony in this case ("Testifying Expert"), or his or her assistants, as party of the Testifying Expert's investigation and/or in developing the Testifying Expert's opinions and reports shall not be subject to discovery.  This limitation applies regardless of whether such draft reports have been disclosed, or otherwise transmitted to, or contain any notes, writing, or markings created by in-house counsel or outside counsel, or employees of or consultants for the party or parties who engaged such Testifying Expert.

18. Notes and other documents prepared by a Testifying Expert, or his or her assistants, as part of the investigation and/or in preparing an expert report shall not be subject to discovery. Discovery of materials provided to Testifying Experts is limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the Testifying Expert in formulating his/her final report(s), trial or deposition testimony, or any opinion in the above-captioned action.

19. No discovery may be taken from any consultant that will not provide testimony and/or an expert opinion in this case ("Consultant"), including with respect to drafts of reports, if any, prepared by an expert except to the extent that the Consultant has provided information, opinions, or other materials that a Testifying Expert relied on in formulating his/her final report(s), trial or deposition testimony, or any opinion in the above-captioned action.  Where a Consultant has provided materials or information that a Testifying Expert has relied on in formulating his/her final report(s), trial or deposition testimony, or any opinion, discovery (other than depositions) may be taken of the Consultant regarding those specific materials and information.

20. The limitations herein do not preclude a party from discovery of prior opinions or testimony of an expert in matters other than the above-captioned action, to the extent the prior opinions or testimony are related to and/or may be inconsistent with the opinions given in the above-captioned action.

21. Written or oral communications between any Testifying Expert or Consultant, his or her assistants, and/or in-house counsel or outside counsel, or employees of or consultants for the party

or parties who engaged such Testifying Expert or Consultant, are not subject to discovery unless the conversations or communications are relied upon by a Testifying Expert in formulating his/her final report(s), trial or deposition testimony, or any opinion in the above-captioned action.

**Privilege Logs**

22. Nothing in this order shall require the production of documents that a party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, or other privilege, doctrine, or immunity. For all documents withheld or redacted on the basis of privilege, the parties agree to furnish logs which comply with the legal requirements under federal law, but at a minimum will include the following information:

> (a) A unique number for each entry on the log. To the extent that a document contains attachments over which privilege is also being asserted, each attachment should be separately logged with an indication of the document to which it is attached;
>
> (b) The date of the document;
>
> (c) The author of the document, including specific identification that an author is counsel, where applicable;
>
> (d) Recipient(s) of the document, including specific identifications that a recipient is counsel, where applicable; and
>
> (e) The type of privilege being asserted.

23. The parties agree that privilege logs need not be provided for documents created after January 21, 2020. However, this provision shall not constitute a waiver of a party's right to specifically request privilege logs covering specific categories of documents created after January 21, 2020, upon a showing of good cause.

24.

25. Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

- 9 -

26. The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.