**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MONARCH NETWORKING<br>SOLUTIONS LLC,<br><br>             Plaintiff,<br><br>     v.<br><br>CISCO SYSTEMS, INC.<br><br>             Defendant. | Civil Action No. 2:20-CV-00015-JRG<br><br>**JURY TRIAL DEMANDED** |

## DEFENDANT CISCO SYSTEMS, INC.'S MOTION
## TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## TABLE OF CONTENTS

**Pages**

I.      INTRODUCTION ................................................................................................1

II.     ISSUE TO BE DECIDED ...................................................................................2

III.    LEGAL STANDARDS .......................................................................................2

IV.     FACTUAL BACKGROUND ..............................................................................3

    A.      Both Parties Are California Companies................................................3

    B.      Monarch's Allegations ........................................................................4

    C.      Most Of The Disclosed Potential Trial Witnesses Are Based In California...........5

    D.      Most Of The Important Third Parties Reside In California. ...................6

V.      ARGUMENT .......................................................................................................8

    A.      Monarch Could Have Originally Brought Suit Against Cisco In The Northern District Of California...........8

    B.      The Private Factors Weigh Heavily In Favor Of Transferring This Case. ..............8

        1.      The First Private Interest Factor Favors Transfer Because Significantly More Sources Of Proof Reside In The Northern District Of California Than Anywhere Else. ................................8

        2.      The Second Private Interest Factor Favors Transfer Because The Northern District Of California Court Can Compel The Attendance Of Relevant Third Party Witnesses, While The Eastern District Of Texas Cannot. .......................11

        3.      The Third Private Interest Factor Favors Transfer Because The Cost Of Attending Trial In The Northern District Of California Will Be Lower For Most Of The Willing Witnesses................................12

        4.      The Fourth Private Interest Factor Is Neutral Because Transferring This Case To The Northern District Of California Would Present No Other Practical Problems. .................................13

    C.      The Public Factors Further Weigh In Favor Of Transferring This Case. ..............13

        1.      The Northern District Of California Has A Strong Local Interest In Determining A Patent Dispute Between Two California

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**
<u>**TABLE OF CONTENTS (cont'd)**</u>

<u>**Pages**</u>

Companies Largely Based On A California Organization's Technical Standards. ...................................................................14

2.   The Other Public Factors Are Neutral. .......................................14

VI.   CONCLUSION.............................................................................................15

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

<u>TABLE OF AUTHORITIES</u>

**Pages**

<u>Cases</u>

*ACQIS LLC v. EMC Corp.*
    67 F.Supp.3d 769 (E.D. Tex. 2014) ................................................................. 14

*Adaptix, Inc. v. HTC Corp.*
    937 F. Supp.2d 867 (E.D. Tex. 2013) ............................................................. 11

*Godo Kaisha IP Bridge 1 v. Intel Corp.*
    No. 2:17-CV-00676-RWS (E.D. Tex. Sept. 28, 2018) ..................................... 9

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*
    No. 2:17-CV-00100-JRG-RSP, 2017 WL 4076052 (E.D. Tex. Sept. 14, 2017) ...... 6, 9, 12

*Gonzalez v. Tagged, Inc.*
    No. 2:14-CV-00906-JRG-RSP, 2015 WL 5578367 (E.D. Tex. Sept. 22, 2015) .............. 15

*Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*
    321 F.2d 53 (5th Cir. 1963) ............................................................................. 3

*In re Adobe Inc.*
    No. 2020-126, 2020 WL 4308164 (Fed. Cir. July 28, 2020) ............................ 15

*In re Genentech, Inc.*
    566 F.3d 1338 (Fed. Cir. 2009) ........................................................... 12, 13, 15

*In Re Hoffman-La Roche Inc.*
    587 F.3d 1333 (Fed. Cir. 2009) ..................................................................... 14

*In re Nintendo Co., Ltd.*
    589 F.3d 1194 (Fed. Cir. 2009) .............................................................. 3, 9, 14

*In re Volkswagen AG*
    371 F.3d 201 (5th Cir. 2004) .................................................................. 2, 3, 13

*In re Volkswagen of Am., Inc.*
    545 F.3d 304 (5th Cir. 2008) ............................................................... 2, 3, 8, 13

*Innovative Glob. Sys. LLC v. Onstar, LLC*
    No. 6:10-CV-574, 2012 WL 12930885 (E.D. Tex. Feb. 14, 2012) ................... 14

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*
    No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) .............. 15

*Oyster Optics, LLC v. Coriant Am. Inc.*
    No. 2:16-CV-1302, 2017 WL 4225202 (E.D. Tex. Sept. 22, 2017) ................. 12

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*Uniloc USA, Inc., v. Apple Inc.*
    No. 2:17-CV-00258-JRG, 2017 WL 11553227 (E.D. Tex. Dec. 22, 2017)................. 1, 11

*Wireless Recognition Techs. LLC v. A9.com, Inc.*
    No. 2:10-CV-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ..................... passim

**Statutes**

28 U.S.C. § 1400.................................................................................................................. 8, 9

28 U.S.C. § 1404.............................................................................................................. 1, 2, 9

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Defendant Cisco Systems, Inc. ("Cisco") respectfully moves the Court to transfer this case

to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I.    INTRODUCTION

This case presents a compelling connection to California.  Both parties to the case as well

as third parties have strong connections to California but no relevant connections to Texas.

With respect to the ***parties***, both Plaintiff and Defendant are California corporations.  All

of the accused products were developed in the Northern District of California.  Most of Cisco's

engineers who are knowledgeable about those products reside in the Northern District of

California.  Plaintiff's only employee identified as a knowledgeable witness is located in

California.  On the other hand, the parties have no connection to Texas.  ***Neither*** of the parties are

Texas corporations and ***none*** of their anticipated witnesses reside in Texas.  In short, the Northern

District of California is a far more convenient forum for this case.  Indeed, this Court has repeatedly

transferred to the Northern District of California when both parties' relevant employees are

principally based in California, and the case has little connection to Texas.  *See, e.g.*, *Wireless*

*Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *1–3 (E.D.

Tex. Feb. 15, 2012); *Uniloc USA, Inc., v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL

11553227, at *7–9 (E.D. Tex. Dec. 22, 2017).

The case for transfer goes beyond the parties' significantly stronger ties to the Northern

District of California.  Third parties, like the Plaintiff's corporate parent, reside within California,

and all of Plaintiff's disclosed potential trial witnesses employed by its parent corporation live in

California.  The majority of Plaintiff's allegations in this case relate to standards from the Internet

and Engineering Task Force ("IETF").  The IETF calls the Northern District of California home.

The only non-patent owner licensee of the Patents-In-Suit that was identified during the patent

acquisition due diligence, ██████████████ is based out of the Northern District of California.

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Lastly, multiple key prior art witnesses reside in California.  Thus, the location of the third parties further weighs in favor of transfer.

Accordingly, Cisco respectfully requests that the Court transfer this case to the Northern District of California.

## II.  ISSUE TO BE DECIDED

Whether the Court should transfer this case to the Northern District of California, where: this case has no connection to the Eastern District of Texas beyond Defendant's nationwide sales of accused products; Plaintiff is a California company with all of its sources of proof located in California; Defendant is a California company with the majority of its sources of proof located in the Northern District; Plaintiff's parent is a California company with all of its relevant witnesses and documents located in California; Plaintiff's infringement claims are largely based upon standards promulgated by a California-based organization; the only disclosed non-patent-owner licensee to the Patents-In-Suit is a Northern District of California corporation; and multiple prior art witnesses reside in the Northern District of California.

## III.  LEGAL STANDARDS

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  "[T]he burden that a moving party must meet to justify a venue transfer is less demanding than that a moving party must meet to warrant a *forum non conveniens* dismissal." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008) ("*Volkswagen II*").  To justify transfer pursuant to 28 U.S.C. § 1404(a), a moving party must first show that "the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  Then, the moving party must show the "transferee venue is clearly more convenient" than the district where the case

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

was originally filed.  *Volkswagen II,* 545 F.3d at 315.

When deciding whether to transfer, courts analyze "private" factors relating to the convenience of parties and witnesses, as well as "public" factors relating to the interests of the competing venues in hearing the case.  *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197–98 (Fed. Cir. 2009). The private factors are:  "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Volkswagen I*, 371 F.3d at 203.  The public factors include:  "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *Id.*

A plaintiff's choice of venue is not a factor in the transfer analysis.  *Volkswagen II*, 545 F.3d at 315.  Rather, this choice is taken into account through the "clearly more convenient" standard applied by the Court in weighing the movant's transfer request.  *Id.*

## IV.    FACTUAL BACKGROUND

### A.    Both Parties Are California Companies.

Plaintiff Monarch Networking Solutions LLC ("Monarch") is "organized under the laws of California with its principal place of business at 4 Park Plaza, Suite 550, Irvine, CA 92614." (D.I. 1 ¶ 4.)  Based upon publicly available information, Monarch has been a California corporation since its inception on October 8, 2019.  (Ex.[1] 14, Monarch Company Profile.)

Since its founding in 1984, Cisco has been a California corporation, headquartered in the

---

[1] All citations to exhibits refer to the attachments to the declaration of Michael R. Rhodes.

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Northern District of California, even deriving its name from the city of San Francisco, where it was founded.   *See*   https://www.cisco.com/c/en_dz/about/blog-africa/2017/8-things-you-didnt-know-about-Cisco.html.   Cisco is currently headquartered in San Jose, California.   (*See* Ex. 3, Lund Decl., ¶ 4.)  Cisco's accused products were principally designed from its California locations.  (Ex. 3, Lund Decl., ¶ 7; Ex. 4, Awan Decl., ¶ 7; Ex. 5, Dharmarajan Decl., ¶ 7.)  Four of the five accused product lines in this case are managed from Cisco's California locations.  (Ex. 3 ¶ 8; Ex. 4 ¶ 8, Ex. 5 ¶ 8.)[2]  None of the accused products were developed in Texas, none of the relevant witnesses work in Texas, and none of the accused products are managed from Texas.  (Ex. 3 ¶ 9; Ex. 4 ¶ 9, Ex. 5 ¶ 10.)

### B.  Monarch's Allegations

On January 21, 2020, Monarch filed this action.  (D.I. 1.)  Monarch accuses Cisco of infringing U.S. Patent Nos. 8,451,844, 8,451,845, 9,019,965, and 8,130,775 (collectively, the "Patents-In-Suit").  (D.I. 1 ¶ 1.)  The Patents-In-Suit list the inventors' residences as France and were originally assigned to French corporation Orange S.A. (f/k/a France Télécom S.A.).  (*See id.* ¶ 18; Exs. 6, 39–41, Patents-In-Suit.)  For three of the four Patents-In-Suit, Monarch's accusations are based upon the following five product lines' alleged compliance with IETF RFC Nos. 7597 and 7599:  the Cisco 500 Series WPAN Industrial Routers, the ASR 1000 and 9000 Series Aggregation Services Routers, and the 1000 and 4000 Series Integrated Services Routers.  (D.I. 1 ¶¶ 34-35.)  For the fourth Patent-In-Suit, Monarch only accuses Cisco's ASR 9000 Series Aggregation Services Routers.  (*Id.* ¶ 36.)  However the patent purports to improve upon an IETF draft standard:  "'An Architecture for Multi-Segment Pseudo-Wire Emulation Edge-to-Edge' (draft-ietf-pwe3-ms-pw-arch-02.txt)."  (Ex. 6, '775 patent, at 1:66–2:2.)  In short, the majority of

---

[2] One of the accused product lines, the ASR 1000 Series, was developed in California but is now principally managed in Canada and in North Carolina.  (Ex. 5, Dharmarajan Decl., ¶¶  7, 9.)

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Monarch's allegations in this case relate to IETF standards and/or drafts.

### C.    Most Of The Disclosed Potential Trial Witnesses Are Based In California.

On June 8, 2020, the parties exchanged initial disclosures.  Among other information, the parties disclosed ten party fact witnesses and six inventors as potential trial witnesses.  (*See* Exs. 7–8, Parties' 6/8/2020 Initial Disclosures.)  Of those ten disclosed fact witnesses, nine reside within California and one resides abroad in Norway.

Monarch disclosed six fact witness representatives knowledgeable about its and its parent's acquisition of the Patents-In-Suit.  (*See* Ex. 8, Monarch's 6/8/20 Initial Disclosures, at 3–4.)  One of these six witnesses, Mr. Marc Booth, is the CEO of Monarch.  (*Id.* at 3.)  The other five witnesses are employees of Monarch's parent corporation, Acacia Research Group LLC ("Acacia").  (*Id.* at 3–4.)  All six reside in California:  Messrs. Marc Booth, Erik Ahroon, and Michael Kim are in Newport Beach, CA. (Exs. 24, 28, 30, Ahroon, Booth, and Kim LinkedIn); Ms. Nadereh Russell is in Orange County, CA (Ex. 33, Russell LinkedIn); Mr. Charlie Raasch is in Lake Forest, CA (Ex. 20, Raasch LinkedIn); and Mr. Eric Lucas is in Laguna Beach, CA (Ex. 23, Lucas LinkedIn).

Cisco disclosed four fact witness representatives.  (*See* Ex. 7, Cisco's 6/8/20 Initial Disclosures, at 6.)  Three of them reside within the Northern District of California, and the fourth witness resides abroad in Norway:  Mr. Rob Hamilton is in the San Francisco Bay Area (Ex. 36, Hamilton LinkedIn); Mr. Mark Townsley is in San Francisco, CA (Ex. 29, Townsley LinkedIn); Mr. Vishnuprakash Selvarajan is in Milpitas, CA (Ex. 38, Selvarajan LinkedIn); and Mr. Ole Trøan is in Norway (Ex. 34, Trøan LinkedIn).[3]

---

[3] On June 24, 2020, Monarch served amended initial disclosures adding two new Texas-based Cisco employees—Soumitra Mukherji and Mitch Oliver—alleging that they had knowledge regarding Cisco's "conception, design, use, development and testing of the accused products" and/or "financial and business data including revenue, profits, and costs involving the accused products."  (*See* Ex. 9, Monarch's 6/24/2020 Amended Initial Disclosures, at 4.)  However, these witnesses have confirmed that they have little to no knowledge regarding either the Accused

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

All six of the inventors of the Patents-In-Suit are believed to be located in France or Switzerland.  (*See* Ex. 8, Monarch's Initial Disclosures; Exs. 19, 25, 26, 32, Inventor LinkedIns.)

### D.    Most Of The Important Third Parties Reside In California.

The third-party companies most likely to have relevant information in this case are:  (i) Acacia, Monarch's parent corporation; (ii) the IETF, the organization maintaining the accused standards RFC Nos. 7597 and 7599 as well as working drafts relevant to the Patents-In-Suit; and (iii) ██████  the only named licensee of the Patents-In-Suit.  Acacia is located in the Southern District of California, while the IETF and █████ are Northern District of California corporations.

Acacia owns 100% of Monarch.  (D.I. 35.)  Acacia is based out of Newport Beach, California.  (Ex. 13, Acacia Bloomberg Profile.)  Acacia is expected to have relevant information regarding the ownership, acquisition, and valuation of the Patents-In-Suit.  Monarch listed five California-based Acacia employees as knowledgeable about Acacia's and Monarch's acquisition of the Patents-In-Suit.  (*See* Ex. 8, Monarch's 6/8/2020 Initial Disclosures, at 3–4.)

The IETF describes itself as "the premier Internet standards body, developing open standards through open processes."  (Ex. 16, IETF About.)  The IETF developed and published RFC Nos. 7597 and 7599, which form the basis for the majority of Monarch's infringement allegations related to the '844 patent, '845 patent, and '965 patent, D.I. 1 ¶¶ 34–36, and the draft for RFC No. 5659, which the '775 Patent purports to improve upon, Ex. 6, '775 patent, at 1:66–

---

Products or Accused Functionalities, and that they have no knowledge or job responsibilities regarding Cisco's "conception, design, use, development and testing of the accused products" and/or "financial and business data including revenue, profits, and costs involving the accused products."  (*See* Ex. 1, Mukherji Decl., ¶¶ 8–9; Ex. 2, Oliver Decl., ¶¶ 8–9.)  Given that neither of these witnesses are likely to provide relevant discovery, or provide any other important role in this case, the Court should not consider them in its transfer analysis.  *See, e.g., Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, No. 2:17-CV-00100-JRG-RSP, 2017 WL 4076052, at *1 (E.D. Tex. Sept. 14, 2017) (transferring to the Northern District of California where defendant's fourteen employees in Plano, Texas office had no responsibility for the design or development of the accused products).

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

2:2.  Additionally, the IETF promulgated RFC No. 4875, a standard that Cisco contends invalidates the '775 Patent.  (Ex.10, Cisco's Invalidity Contentions, at 7.)  The IETF is headquartered in the Northern District of California in Fremont, CA.  According to the IETF's website, all document subpoenas and requests to inspect physical documents must be addressed to:  5177 Brandin Court, Fremont, CA 94538.  (*See* Ex. 15, IETF Process, at 6.)  The IETF further instructs that all in-person depositions of its employees should occur in the "Bay Area, CA."  (*Id.*)

████ designs, manufacturers, and sells various consumer electronics equipment, and is based out of ████████████████████████████  According to the original patent owner Orange S.A., ████ is the only licensee of the Patents-In-Suit other than a grant-back license to Orange S.A. (████████████████████) According to the former owner of the Patents-In-Suit, ████████████ likely practice the patent portfolio that includes the Patents-In-Suit.  (*Id.*) ████ is expected to have information related to the potential value of the Patents-In-Suit and the ████████████ which may practice the Patents-In-Suit.  ████ requires subpoenas to be served either at ████████████ ████████ or through the CT Corporation. ████████████

Some of the prior art witnesses also reside in California.  On June 29, 2020, Cisco served its Preliminary Invalidity Contentions on Monarch, which included several primary prior art references that invalidate the Patents-In-Suit.  (Ex. 10, Cisco's Preliminary Invalidity Contentions, at 5–7.)  The authors of the invalidating prior art references are dispersed throughout the world.  However, on information and belief, none of those witnesses reside in Texas.  On the other hand, some of the third party authors of Cisco's invalidating prior art reside in California[4]:

---

[4] Cisco also has current employees who authored some invalidating prior art references in the Northern District, such as Cisco identified potential trial witness Mark Townsley, an inventor of U.S. Patent Nos. 8,868,775 and 8,160,055.  (Ex. 10, Cisco's Invalidity Contentions, at 6.)

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

- Mr. Rahul Aggarwal, author of IETF RFC No. 4875 and inventor of U.S. Patent Nos. 7,590,115 and 7,602,702, resides in the Bay Area (Ex. 35, Aggarwal LinkedIn);

- Mr. Dave Ward, inventor of U.S. Patent No. 8,868,775, resides in the San Francisco Bay Area (Ex. 22, Ward LinkedIn); and

- Mr. Keyur Patel, inventor of U.S. Patent No. 8,081,563, resides in San Jose, California (Ex. 27, Patel LinkedIn).

## V.    ARGUMENT

### A.    Monarch Could Have Originally Brought Suit Against Cisco In The Northern District Of California.

A patent-infringement action may be brought in "the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  Cisco is headquartered in San Jose, California, and resides within the Northern District of California.  (Ex. 3, Lund Decl., ¶ 4; Ex. 4, Awan Decl., ¶ 4.)  Therefore, venue is proper in the Northern District of California for this action.

### B.    The Private Factors Weigh Heavily In Favor Of Transferring This Case.

The first three private factors—the location of the sources of proof, the number of witnesses under each jurisdiction's subpoena power, and the convenience of willing witnesses—all weigh heavily towards a transfer to the Northern District of California because the sources of proof and witnesses predominately reside within California.  The final private factor—other practical considerations—is neutral because neither venue has made any substantive rulings on the Patents-In-Suit.  Therefore, the totality of the private factors weigh heavily in favor of transfer.

### 1.    The First Private Interest Factor Favors Transfer Because Significantly More Sources Of Proof Reside In The Northern District Of California Than Anywhere Else.

The first private interest factor—which considers which judicial district houses more sources of proof—favors transfer. *See Volkswagen II*, 545 F.3d at 316.  *First*, **both** parties, and presumably their sources of proof, reside within California.  *Second*, the key third parties, and

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

presumably their sources of proof, also reside in California.

*First*, both parties reside near or within the Northern District of California.   Plaintiff Monarch is near the Northern District of California in Irvine, California.   All of Monarch's evidence is expected to originate from Irvine, California, which is only a few hundred miles from the Northern District.

Defendant Cisco resides within the Northern District of California.   All of the accused products were researched, designed and developed in Cisco's California locations, and four-out-of-five of the accused product lines continue to be managed from those locations.   *See supra* Section IV.A.   Cisco maintains electronic document repositories and thus does not anticipate identifying relevant non-electronic, physical documents.   The fact that Cisco's document repositories can be accessed electronically from many locations, including both the Eastern District of Texas and the Northern District of California, neither supports nor weighs against transfer under §1404.[5]   Moreover, to the extent any non-electronic, physical documents exist, they would likely be in California.   *See Nintendo*, 589 F.3d at 1199; *Godo Kaisha v. Xilinx*, 2017 WL 4076052, at *3 (the location of a party's headquarters in the transferee venue favors transfer as that is where a bulk of the discovery is presumably located).   When both parties reside within California, transfer is further favored.   *See, e.g.*, *Wireless Recognition*, 2012 WL 506669, at *3–4.

*Second*, most of the key third parties reside near or within the Northern District of California.   As explained above, Monarch's parent corporation, the IETF, and ███████ are the most

---

[5] Cisco does have servers located in its Richardson, Texas facilities, but the documents on these servers can be accessed from anywhere, and the documents' storage on physical servers in Texas is irrelevant.   A facility in the District that has nothing to do with the case is not relevant to deciding a Motion to Transfer under §1404(a), even though it may be relevant to whether venue is proper under §1400.   *See* Ex. 11, Order at 1–2, *Godo Kaisha IP Bridge 1 v. Intel Corp.*, No. 2:17-CV-00676-RWS (E.D. Tex. Sept. 28, 2018), ECF No. 157.

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

likely third party companies to have relevant documentation in this case.  All of these companies are located in California and are expected to maintain relevant evidence in that state.

Monarch's parent corporation, Acacia, is based out of Newport Beach, California.  (Ex. 13, Acacia Bloomberg Profile.)  Because Acacia "([Plaintiff]'s ultimate parent) is located in Southern California, which is much closer to the Northern District of California than the Eastern District of Texas," Acacia's location weighs in favor of transfer.  *Wireless Recognition*, 2012 WL 506669, at *1–3 (granting motion to transfer a case filed by another Acacia subsidiary from the Eastern District of Texas to the Northern District of California).

The IETF is expected to maintain proof concerning:  (i) the accused standards (RFC Nos. 7597 and 7599); (ii) IETF working draft documents relevant to the Patents-In-Suit; (iii) patent licensing obligations of the original patentee; (iv) disclosures by the inventors of intellectual property rights to the standard setting body; and (v) prior art that Cisco contends invalidates one of the Patents-In-Suit (RFC No. 4875).  (Ex. 10, Cisco's Preliminary Invalidity Contentions, at 7.) The IETF mandates that subpoenas to be addressed to:  5177 Brandin Court, Fremont, CA, 94538, and depositions to be conducted in the Bay Area, CA, demonstrating that its sources of proof are within the Northern District of California.  (*See* Ex. 15, IETF Process, at 6.)



is expected to have proof related to its license to the Patents-In-Suit, including any relevant negotiations, and its ▮▮▮▮▮▮▮▮▮▮ that may embody at least some of the Patents-In-Suit.  (▮▮▮▮▮▮▮▮▮▮▮▮▮.)  ▮▮▮▮ is headquartered in ▮▮▮▮▮▮, and its relevant evidence is expected to largely reside there.  (▮▮▮▮▮▮▮▮.)  ▮▮▮▮ requests subpoenas to be addressed to ▮▮▮▮▮▮▮▮▮▮ within the Northern District of California.  (▮▮▮▮▮▮▮▮.)

In sum, the first private interest factor strongly favors transfer.

10

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**2.      The Second Private Interest Factor Favors Transfer Because The Northern District Of California Court Can Compel The Attendance Of Relevant Third Party Witnesses, While The Eastern District Of Texas Cannot.**

The Northern District of California can compel the attendance of many key third-party witnesses, whereas the Eastern District of Texas lacks subpoena power over *any* relevant third-party witness.  More specifically, the Northern District of California has trial subpoena power over Acacia, and absolute subpoena power over the IETF, ███ and some of the prior art witnesses. A Court has trial subpoena power to compel trial testimony over residents of its home state, and absolute subpoena power to compel deposition and trial testimony within 100 miles of where it sits.  *See* Fed. R. Civ. P. 45(c)(1)(A), 45(c)(1)(B); *see also Uniloc*, 2017 WL 11553227, at *6.

The Northern District of California has trial subpoena power over Acacia's witnesses. Acacia is in Irvine, California.  (Ex. 13, Acacia Bloomberg Profile.)  Because Acacia and its identified witnesses are located in California, a Northern District of California court can compel them to attend trial.  Fed. R. Civ. P. 45(c)(1)(B); *see also Wireless Recognition*, 2012 WL 506669, at *4 (finding that this factor weighed in favor of transfer to the Northern District of California where the Northern District has the power to command Acacia witnesses to attend trial).

The Northern District of California has absolute subpoena power over the IETF, ███, and some of the prior art witnesses because they reside within 100 miles of San Francisco.  Fed. R. Civ. P. 45(c)(1)(A).  "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses."  *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp.2d 867, 874 (E.D. Tex. 2013).

Both the IETF and ███ are headquartered within the Northern District of California and within 100 miles of San Francisco.  *See supra* Section IV.D.  The IETF is expected to have witnesses knowledgeable about its records regarding the relevant IETF standards, relevant

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

working drafts, and the FRAND licensing obligations attached to the Patents-In-Suit.  ███  is

expected to have witnesses knowledgeable regarding the only license to the Patents-In-Suit (other

than a grant-back license to the original patent owner) and the associated licensed products.  This

weighs in favor of transfer.  *See, e.g.*, *Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-CV-1302,

2017 WL 4225202, at *6 (E.D. Tex. Sept. 22, 2017) ("[T]he majority, if not all, of accused device

third-party component manufacturers are located in the Northern District of California. . . . While

at this stage [Defendant] has not identified specific witnesses, who may well reside outside of the

Northern District, these third party suppliers have major presences in the Northern District.");

*Godo Kaisha v. Xilinx*, 2017 WL 4076052, at *4 (transferring where all identified third parties

were located in the Northern District of California).

Moreover, the Northern District of California has subpoena power over three third-party

authors and/or inventors of Cisco's prior art references because those witnesses reside near San

Francisco.  *See supra* Section IV.D.  Only the Northern District of California has absolute

subpoena power over those individuals.  This further weighs in favor of transfer.  *See, e.g.*, *Wireless*

*Recognition*, 2012 WL 506669, at *4 (finding that this factor weighed in favor of transfer where

several witnesses with "contributions to the prior art" are within the transferee district).

In sum, the second private interest factor strongly favors transfer.

> **3.      The Third Private Interest Factor Favors Transfer Because The Cost
> Of Attending Trial In The Northern District Of California Will Be
> Lower For Most Of The Willing Witnesses.**

The Northern District of California is significantly more convenient for the willing

witnesses because Monarch and its witnesses are located in California, and Cisco and most of its

witnesses are located in California.  "The convenience of the witnesses is probably the single most

important factor in transfer analysis."  *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009)

(citation omitted).  "[A]dditional distance [from home] means additional travel time; additional

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen II*, 545 F.3d at 317 (citation omitted).

Monarch is a California company, and all six of its currently-identified Monarch-aligned fact witnesses reside in California. *See supra* Section IV.A.  Moreover, Monarch represented that it expects to use a technical expert witness who lives in Redwood City, California, within the Northern District.  (D.I. 58 at 2.)  It would be much more convenient for Monarch's fact witnesses and expert witness to attend trial in their shared home state of California rather than in Texas.

The Northern District of California is significantly more convenient for Cisco's witnesses too.  Three of Cisco's four identified witnesses live within the Northern District of California.  *See supra* Section IV.C.  Mr. Ole Trøan, Cisco's other witness, is in Norway, and neither district is significantly more convenient for him.  *See Genentech*, 566 F.3d at 1344 ("The witnesses from Europe will be required to travel a significant distance no matter where they testify.").

In sum, the third private interest factor strongly favors transfer.

### 4.     The Fourth Private Interest Factor Is Neutral Because Transferring This Case To The Northern District Of California Would Present No Other Practical Problems.

The fourth factor is neutral because, to date, none of the Patents-In-Suit have been previously litigated as part of a patent infringement dispute, and no substantive proceedings regarding the Patents-In-Suit have occurred in this litigation.  This case presents no "other practical problems" that make trial more "easy, expeditious and inexpensive" in either forum.  *See Volkswagen I*, 371 F.3d at 203.  This factor is therefore neutral.

### C.     The Public Factors Further Weigh In Favor Of Transferring This Case.

The public factors further weigh in favor of a transfer because the Northern District of California has a strong local interest in resolving this dispute between California parties, and none

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

of the other public factors weigh either for or against transfer.

      **1.**      **The Northern District Of California Has A Strong Local Interest In Determining A Patent Dispute Between Two California Companies Largely Based On A California Organization's Technical Standards.**

The Northern District of California has a strong local interest in this case "because the cause of action calls into question the work and reputation of several individuals residing in or near that district." *See In Re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).  Here, Monarch, a California corporation, accuses Cisco, another California corporation, of infringing its patents.  Furthermore, Monarch calls into question the reputation of Cisco's San Jose-based engineers "involved in the development and implementation of the accused products." *See ACQIS LLC v. EMC Corp.*, 67 F.Supp.3d 769, 779 (E.D. Tex. 2014).  Moreover, the bulk of Monarch's allegations depends on standards from the IETF, a California-based organization.  Additionally, the parties dispute whether three California residents—Mr. Aggarwal, Mr. Ward, and Mr. Patel— invented the subject matter of the Patents-In-Suit before the listed French inventors.  The Northern District of California has an interest in determining whether its local residents invented these ideas. *See, e.g.*, *Innovative Glob. Sys. LLC v. Onstar, LLC*, No. 6:10-CV-574, 2012 WL 12930885, at *8 (E.D. Tex. Feb. 14, 2012) (finding that "several other third-party prior art witnesses" located in transferee district demonstrated local interest).  In short, Monarch's allegations call into question the work and reputation of multiple California entities and implicate local California interests.

On the other hand, none of the parties, managing engineers, relevant standards bodies, or licensees reside in Texas.  And the general sales of the Accused Products throughout the United States, including this District, fail to establish "a meaningful connection to the case" for purpose of the transfer analysis. *See Nintendo*, 589 F.3d at 1198 (internal quotation omitted).  The Northern District of California's relatively strong local interest in this case weighs in favor of transfer.

      **2.**      **The Other Public Factors Are Neutral.**

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*First*, "[b]oth the Northern District of California and Eastern District of Texas are familiar with patent law." *Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, *7 (E.D. Tex. Jan. 23, 2012). Thus, the venues' relative familiarity with the applicable law does not weigh for or against transfer.

*Second*, the relative time to trial also is neutral. The relative time to trial is "the most speculative" transfer analysis factor. *Genentech*, 566 F.3d at 1347. "[I]n situations where several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *Wireless Recognition*, 2012 WL 506669, at *6 (citation and internal quotation omitted). Indeed, "[t]he Eastern District of Texas and Northern District of California have similar average times to trial." *Gonzalez v. Tagged, Inc.*, No. 2:14-CV-00906-JRG-RSP, 2015 WL 5578367, *4 (E.D. Tex. Sept. 22, 2015); *see also In re Adobe Inc.*, No. 2020-126, 2020 WL 4308164, at *3 (Fed. Cir. July 28, 2020) (overturning decision to not transfer case from the Western District of Texas to the Northern District of California because the Texas court's ability to schedule a trial quickly did not outweigh convenience factors.).

*Third*, this case presents no conflict of laws issues.

In short, only California's strong interest in resolving this dispute weighs for transfer.

## VI.   CONCLUSION

For the foregoing reasons, Cisco respectfully requests that this Court transfer this case to the Northern District of California.

15

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Dated: September 3, 2020                    By:    /s/ *Michael R. Rhodes with permission*
                                                     *by Michael E. Jones*
                                                Tamir Packin (*pro hac vice*)
                                                tpackin@desmaraisllp.com
                                                Jennifer Przybylski (*pro hac vice*)
                                                jprzybylski@desmaraisllp.com
                                                Ryan T. Lawson (*pro hac vice*)
                                                rlawson@desmaraisllp.com
                                                Raymond Habbaz (*pro hac vice*)
                                                rhabbaz@desmaraisllp.com
                                                William N. Yau (*pro hac vice*)
                                                wyau@desmaraisllp.com
                                                DESMARAIS LLP
                                                230 Park Avenue
                                                New York, NY 10169
                                                Tel:  (212) 351-3400
                                                Fax:  (212) 351-3401

                                                Michael R. Rhodes (*pro hac vice*)
                                                mrhodes@desmaraisllp.com
                                                DESMARAIS LLP
                                                101 California Street
                                                San Francisco, CA 94111
                                                Tel: (415) 573-1900
                                                Fax: (415) 573-1901

                                                *Lead Counsel for Defendant*
                                                *CISCO SYSTEMS, INC.*

                                                Michael E. Jones (State Bar No. 10929400)
                                                mikejones@potterminton.com
                                                POTTER MINTON, P.C.
                                                110 North College, Suite 500
                                                Tyler, Texas 75702
                                                Tel:  (903) 597-8311
                                                Fax:  (903) 593-0846

                                                *Local Counsel for Defendant*
                                                *CISCO SYSTEMS, INC.*

16

**RESTRICTED—ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on September 3, 2020.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on September 3, 2020.

*/s/ Michael E. Jones*
*Michael E. Jones*

**<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>**

I hereby certify that the foregoing document is authorized to be filed under seal based upon the Protective Order (D.I. 62) entered in this case.

*/s/ Michael R. Rhodes with permission*
*by Michael E. Jones*

RESTRICTED—ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for movant has conferred with opposing counsel in a good faith attempt to resolve the matter without court interference, and this motion is opposed.  More specifically, counsel met and conferred via WebEx teleconference on Friday, August 28, 2020 for approximately one hour regarding both this motion and claim construction issues.  Plaintiff Monarch was represented by Allan Bullwinkel and Max Tribble. Defendant Cisco was represented by Tamir Packin and Michael Rhodes.

/s/ *Michael R. Rhodes with permission*
*by Michael E. Jones*