# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| MONARCH NETWORKING SOLUTIONS LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>CISCO SYSTEMS, INC.,<br><br>    Defendant. | Civil Action No. 2:20-CV-00015-JRG<br><br>**JURY TRIAL DEMANDED** |

**CISCO'S RENEWED MOTION TO STAY PENDING PROCEEDING
TO DECIDE OWNERSHIP OF THE ASSERTED PATENTS**

**TABLE OF CONTENTS**

**Pages**

I.  INTRODUCTION ...................................................................................................................1

II. ISSUE TO BE DECIDED ......................................................................................................4

III. STATEMENT OF RELEVANT FACTS AND ALLEGATIONS.......................................4

IV. PROCEDURAL POSTURE ..................................................................................................6

V. LEGAL STANDARDS ...........................................................................................................8

    A.    Staying Proceedings............................................................................................8

    B.    Patent Owner Standing ......................................................................................9

VI. ARGUMENT............................................................................................................................9

    A.    A Stay Will Not Unduly Prejudice Monarch Or Provide Cisco With A Tactical Advantage. ..........................................................................................10

    B.    The Delaware Action Can Simplify Every Issue In This Case By Determining That Monarch Has No Standing To Bring Suit. ...............................12

    C.    Significant Proceedings Remain In This Action................................................13

VII. CONCLUSION.....................................................................................................................14

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*Abraxis Bioscience, Inc. v. Navita LLC*,
    625 F.3d 1359 (Fed. Cir. 2010) .................................................................................... 9, 12

*Constellation IP, LLC v. The Allstate Corp.*,
    No. 5:07-CV-132, 2008 WL 4787625 (E.D. Tex. May 12, 2008) .................................... 10

*EchoStar Techs. Corp. v. TiVo, Inc.*,
    No. 5:05-CV-81, 2006 WL 2501494 (E.D. Tex. July 14, 2006) ........................................ 8

*e-Watch Inc. v. Apple, Inc.*,
    No. 2:13-CV-1061, 2015 WL 12915668 (E.D. Tex. Mar. 25, 2015) ............................... 13

*H.R. Techs., Inc. v. Astechnologies, Inc.*,
    275 F.3d 1378 (Fed. Cir. 2002) .................................................................................... 9, 12

*Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*,
    No. 2:16-CV-505, 2017 WL 7051628 (E.D. Tex. Oct. 25, 2017) .................................... 13

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ........................................................................................................... 8

*Motorola Mobility, Inc. v. TiVo, Inc.*,
    No. 5:11-CV-53, 2011 WL 13196554 (E.D. Tex. July 6, 2011) ...................................... 10

*NFC Tech. LLC v. HTC Am., Inc.*,
    No. 2:13-CV-1058, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) ................................. 11

*Norman IP Holdings, LLC v. TP-Link Techs.*, Co.,
    No. 6:13-CV-384, 2014 WL 5035718 (E.D. Tex. Oct. 8, 2014) ...................................... 13

*Optimal Golf Sols., Inc. v. Altex Corp., et. al.*,
    No. 3:09-CV-1403, 2009 WL 10733424 (N.D. Tex. Sept. 30, 2009) ........................... 1, 12

*Paradise Creations, Inc. v. UV Sales, Inc.*,
    315 F.3d 1304 (Fed. Cir. 2003) .......................................................................................... 9

*Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys., Inc.*,
    No. 2:19-CV-225, 2021 WL 121154 (E.D. Tex. Jan. 13, 2021) ...................................... 14

*Rmail Ltd. v. Amazon.com, Inc.*,
    No. 2:10-CV-258, 2014 WL 11394910 (E.D. Tex. Jan. 30, 2014) ............................ passim

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*RPost Holdings, Inc. v. Exacttarget, Inc.*,
    No. 2:12-CV-512, 2014 WL 12703780 (E.D. Tex. Sept. 29, 2014).................... 1, 9, 11, 12

*Soverain Software LLC v. Amazon.com, Inc.*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005) ................................................................ 3, 8, 9, 12

*Spa Syspatronic, AG v. Verifone, Inc.*,
    No. 2:07-CV-416, 2008 WL 1886020 (E.D. Tex. Apr. 25, 2008).................................... 11

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    759 F.3d 1307 (Fed. Cir. 2014)........................................................................................ 13

Defendant Cisco Systems, Inc. ("Cisco") respectfully moves the Court to stay this case pending the resolution of Delaware Chancery case *Slingshot Techs. v. Acacia Research Corp., et al.*, No. 2019-0722 (the "Delaware Action"), determining whether Plaintiff Monarch Networking Solutions LLC ("Monarch") owns U.S. Patent Nos. 8,451,844; 9,019,965; and 8,130,775 (collectively, the "Asserted Patents").

I.    INTRODUCTION

As Monarch readily acknowledges in its Complaint, Monarch's alleged ownership of all of the Asserted Patents is an open question that Monarch is actively litigating in Delaware. (*See* D.I. 1 ¶ 6.) In the Delaware Action, a third party seeks to rescind the sale of the Asserted Patents to Acacia Research Group LLC ("ARG"), Monarch's parent corporation, and the subsequent assignment to Monarch. (*Id.*) If the Delaware plaintiff is successful in its request, the Delaware Action will divest Monarch of standing to continue this lawsuit. Courts routinely stay cases in the face of collateral attacks on patent ownership. *See, e.g.*, *Rmail Ltd. v. Amazon.com, Inc.*, No. 2:10-CV-258, 2014 WL 11394910 (E.D. Tex. Jan. 30, 2014); *RPost Holdings, Inc. v. Exacttarget, Inc.*, No. 2:12-CV-512, 2014 WL 12703780 (E.D. Tex. Sept. 29, 2014); *Optimal Golf Sols., Inc. v. Altex Corp., et. al.*, No. 3:09-CV-1403, 2009 WL 10733424 (N.D. Tex. Sept. 30, 2009).

Previously, Cisco moved to stay this case pending the Delaware Action. (D.I. 54.) Monarch opposed Cisco's motion to stay, arguing that the Delaware Action plaintiff cannot rescind Monarch's ownership of the Asserted Patents as a matter of black-letter Delaware contract law. (*See* D.I. 64 at 1–2, 6–9.) The Court denied Cisco's motion to stay. (D.I. 101.) But the Delaware court recently rejected Monarch's black-letter law arguments, and the Delaware Action for rescission is now moving forward.

Monarch made its Delaware contract law arguments to the Delaware court by filing a motion to dismiss the pending rescission claims. (Ex. 10[1], Delaware Motion To Dismiss, at 52–57.) But on February 12, 2021, the Delaware court rejected Monarch's Delaware contract law arguments and denied Monarch's motion to dismiss. (Ex. 11, Delaware Order (noting "Motion to dismiss rescission remedy denied"); *see also* Ex. 12, Delaware Hearing Tr., at 66:7–24.) At the Delaware hearing on February 12, 2021, Monarch asked the Delaware court to dismiss the rescission claims and told the Delaware court about this litigation, including the risk of Cisco securing a stay:

> Counsel for Monarch and ARG: [W]e would suggest that it's appropriate at this stage to dismiss the rescissionary remedy. And the one thing I want to emphasize as well is that, at least to Acacia, this is important. This is something that is currently being litigated. This has been an issue in the Eastern District of Texas. […]
>
> Delaware court: I get that there's patent prosecution litigation going on. Are you telling me that one of your opponents in that patent litigation is saying, hey, we should delay this because we don't even know if they're the right title holders?

(Ex. 12, Delaware Transcript, at 55:20–56:9, 57:9–19; *see also id*. at 56:10-57:19.) But the Delaware court ***denied*** Monarch's motion to dismiss and explained that it disagreed that the rescission remedy was not available; on the contrary, it noted that rescinding Monarch's patent ownership would be ***an "attractive" remedy*** relative to determining the value of the patents if it successfully proved its pled facts.

> Delaware court: ***If*** the reality, though, is that this case goes forward and ***there is proof of wrongdoing and some remedy needs to happen***, your [*i.e.*, Monarch's] argument about rescission is not geared towards telling me that I would not have the power or the court would not have the power to, for example, move the patents from you [*i.e.*, Monarch] to Slingshot in lieu of trying to figure out some complex, forward-looking damages calculation. […]

---

[1] All citations to exhibits refer to the attachments to the declaration of Michael R. Rhodes.

2

> Because that's [*i.e.*, ***moving the patents is***] ***what's attractive to me.*** Again, by saying that's what's attractive to me, I'm not saying that, oh, I've already prejudged this case and I think that the right remedy is X. What I'm saying is that when I put myself in the hypothetical world where, contrary to your expectations, you-all have actually lost, because that's the world I have to imagine myself occupying to figure out what remedies are available, and then ***I think to myself, okay, what would I do***?
>
> And ***option A is a complex damages number where everybody is going to come in with projections about what these patents can yield*** and what similar patent portfolios can yield. And I've got to listen to a lot of rigmarole about that and make some type of hypothetical probabilistic judgment about what the future holds and then try to reduce that to a damages number versus saying I don't have to do any of that. ***I'm going to give the plaintiffs the patents themselves, and then they can go and realize whatever value on them they can***, et cetera.
>
> ***I don't want to, at this stage of the case, decide that I don't have the power to do that***, ***and I'm not sure why I wouldn't have the power to do that in terms of some equitable remedy***. I get that it doesn't necessarily make sense to rescind the transaction in terms of sending everything back as between you and Transpacific, ***but it does seem to me that there's some attractiveness to an equitable remedy*** as opposed to some complex, multivariate damages calculation.

(Ex. 12, Delaware Transcript, at 58:11–60:6 (emphasis added).) In short, the Delaware court has suggested that rescission is a very plausible outcome of the Delaware Action, a flat rejection of the same arguments Monarch raised when opposing Cisco's motion to stay .

In light of these new Delaware Action developments, all three *Soverain* factors support a stay. *See Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662–63 (E.D. Tex. 2005). *First*, Monarch cannot credibly claim undue prejudice. Monarch knew its alleged ownership of the Asserted Patents was an open issue in the Delaware Action ***before*** filing this suit. Cisco promptly moved to stay this case on that basis. And a stay would not unduly prejudice Monarch because Monarch neither seeks equitable relief in this case nor competes with Cisco. Nor would a stay affect Monarch's ability to recover a reasonable royalty in the event that it

3

maintains ownership of the Asserted Patents. *Second*, the Delaware Action can more than simplify this case; it can eliminate this case entirely. If the Delaware court rescinds ARG's patent acquisition agreement, Monarch will lack initial standing to sue for infringement, requiring this Court to dismiss this case in its entirety. Because the Delaware Action threatens to moot this case in its entirety, it is inefficient to waste the Court's and the parties' resources on this lawsuit under the Delaware Action's looming shadow. *Third*, the procedural posture of this case favors a stay. Cisco originally filed its motion to stay when this case was in its infancy. And now Cisco promptly renews its motion to stay before the Court has expended significant effort on adjudicating summary judgment motions, *Daubert* motions, and pre-trial disclosures, and before the start of jury selection. Thus, a stay would serve to save significant judicial resources.

## II.   ISSUE TO BE DECIDED

Whether the Court should stay this case, pending resolution of an earlier-filed co-pending proceeding to determine whether Plaintiff owns the Asserted Patents, where: Plaintiff knew of the co-pending proceeding before it sued Defendant; Plaintiff does not compete with Defendant; Plaintiff seeks only monetary relief; the co-pending proceeding could render this lawsuit moot; Plaintiff is a party to the co-pending suit; the court in the co-pending action has ruled that the claim to undo Plaintiff's patent ownership is legally viable under Delaware law; and the court in the co-pending action has stated that rescinding Plaintiff's ownership of the Asserted Patents is a viable and attractive remedy.

## III.   STATEMENT OF RELEVANT FACTS AND ALLEGATIONS

Monarch accuses Cisco of infringing the Asserted Patents. (D.I. 1, ¶¶ 1–2) Although Monarch alleges in its Complaint that it "is the owner of all right, title, and interest" in the Asserted Patents (*id*., ¶¶ 19, 26, 29), Monarch acknowledges that its ownership is subject to dispute in a previously filed Delaware Chancery Court case.

4

> On September 6, 2019, **Slingshot Technologies, LLC, filed a complaint in Delaware Chancery Court seeking to rescind the sales transaction that led to Acacia's (and subsequently Monarch's) acquisition of the Asserted Patents.** Acacia vigorously denies the allegations in the Slingshot lawsuit, and **Monarch's ownership of the patents is intact until such point, if ever, that Slingshot succeeds on the merits of its lawsuit**. Nevertheless, out of an abundance of caution, Monarch herein discloses the existence of that lawsuit.

(*Id*., ¶ 6 (emphasis added).)  The Asserted Patents indicate on their faces that they were originally assigned to France Télécom S.A., now known as Orange S.A. (Exs. 1–3, Asserted Patents).

According to the USPTO's public website, the Asserted Patents were assigned on:

- September 21, 2017—assigned from Orange S.A. to Transpacific IP Group Limited ("Transpacific");
- March 29, 2019—assigned from Transpacific to ARG; and
- November 18, 2019—assigned from ARG to Monarch.

(*See* Exs. 4–6, https://portal.uspto.gov/pair/PublicPair (last accessed February 22, 2021).)

As Monarch readily acknowledges, the March 29, 2019 assignment from Transpacific to ARG and the November 18, 2019 assignment from ARG to Monarch are currently being litigated in Delaware.  (*See* D.I. 1 ¶¶ 5–6.)  To undo these transfers, Slingshot Technologies, LLC's ("Slingshot's") Second Amended Complaint ("SAC")[2] targets the Transpacific-ARG and ARG-Monarch assignments by naming Transpacific, Katharine Wolanyk, ARG, Acacia Research Corporation ("ARC"), and Monarch as defendants. (Ex. 9, SAC at 1, 83.)  Generally, Slingshot asserts*, inter alia,* that in selling the portfolio that includes the Asserted Patents (the "Orange Patent

---

[2] On September 6, 2019, Slingshot filed the Delaware Action. (*See generally* Ex. 7, Slingshot's Original Complaint.)  On December 3, 2019, Slingshot filed an amended complaint. (*See generally*, Ex. 8, Slingshot's First Amended Complaint.)  On April 9, 2020, Slingshot filed a second amended complaint with additional supporting facts. (*See generally*, Ex. 9, SAC.)

5

Portfolio") to ARG, Transpacific breached both express and implied provisions of its Patent Sale Agreement with Slingshot. (Ex. 9, SAC, ¶¶ 172–180, 189–195 (Counts V, VII).) Slingshot further asserts, *inter alia*, that Ms. Wolanyk knowingly breached her fiduciary duties to Slingshot (Ex. 9, SAC, ¶¶ 212–214, 217 (Count X)), and that ARG and ARC aided and abetted that breach (*id*. 219–224, 226 (Count XI)). Slingshot's allegations are discussed in more detail in Cisco's previous motion to stay. (*See* D.I. 54 at 3-9.)

Based on those causes of action, Slingshot requests, *inter alia*, that the Delaware court rescind ARG's acquisition of the Orange Patent Portfolio from Transpacific and its subsequent assignment to Monarch:

> c. ***Rescinding Defendant Acacia's acquisition of the Orange Patent Portfolio and ARG's assignment of the patents contained in that portfolio to*** any entities under common ownership or control with Defendants, including ***Monarch*** and the imposition of a constructive trust holding the Orange Patent Portfolio subject to an option for Plaintiff to buy the Orange Patent Portfolio on terms that would be equitable under the circumstances; . . .

(Ex. 9, SAC, at 83 (emphasis added).)

### IV. PROCEDURAL POSTURE

Monarch filed this case on January 21, 2020. (D.I. 1.) On March 31, 2020, Cisco both answered Monarch's complaint and moved to stay this case. (D.I. 27, 29, 31.) On April 21, 2020, Monarch filed an opposition to Cisco's motion to stay. (D.I. 40.) On April 29, 2020, Cisco filed a reply in support of its motion to stay, and on May 6, 2020, Monarch filed its sur-reply. (D.I. 41, 44.) On May 22, 2020, the Court denied Cisco's motion to stay this case without prejudice and allowed Cisco to re-urge its motion by June 3, 2020. (D.I. 47 at 3.) On June 3, 2020, Cisco re-urged its motion to stay. (D.I. 54.) On June 17, 2020, Monarch opposed Cisco's motion to stay. (D.I. 64.) Monarch opposed Cisco's motion to stay because, according to Monarch, Slingshot would not be able to rescind Monarch's ownership of the asserted patents as a matter of black-

6

letter Delaware contract law. (*See* D.I. 64 at 1-2, 6-9.) In parallel to the motion to stay briefing, Monarch and its co-defendants moved to dismiss Slingshot's rescission claims asserting that they are not legally viable. (Ex. 10, Delaware Motion To Dismiss, at 52–57.)

On October 15, 2020, the Court issued a *sua sponte* order requesting a status update on the Delaware Action. (D.I. 93.) On October 21, 2020, the parties submitted a joint status update on the Delaware Action, informing the Court that the Delaware court had a hearing scheduled for the Delaware Action motions to dismiss for February 12, 2021. (D.I. 94.) On October 29, 2020, the Court denied Cisco's motion to stay. (D.I. 101.) On February 12, 2021, the Delaware court held a hearing on the Delaware Action defendants' motions to dismiss Slingshot's rescission claim, and the Delaware court denied the motions to dismiss the rescission claim without a written explanation. (Ex. 11, Delaware Order.) On February 19, 2021, Cisco obtained the hearing transcript from the Delaware court's hearing. (Ex. 12, Delaware Transcript.) During the Delaware court hearing, Monarch argued that Slingshot's rescission remedy is not viable under Delaware contract law. (*See, e.g.*, Ex. 12, Delaware Transcript, at 53:21-56:9 ("I'll raise three issues that we think are more appropriate at law, and I'd really like to focus on two because I think they're the simplest and easiest. The first is adequate remedy at law. We've cited a number of cases that do grant a motion to dismiss and get rid of the rescissionary remedy because there is an adequate remedy at law. … Separately, the -- Slingshot is admittedly not a party to the contract it seeks to unwind or would seek to unwind between Acacia and Transpacific. And we've cited a litany of cases that say it's the law and good law that you can't just come in willy-nilly and undo the contracts between – when you're a nonparty."); *see also* Ex. 10, Delaware Motion To Dismiss, at 52–57.) The Delaware court rejected Monarch's Delaware contract argument and denied Monarch's motion to dismiss. (Ex. 11, Delaware Order.) Indeed, the Delaware court explained

7

that "mov[ing] the patents from [Monarch] to Slingshot" would be the remedy that is "attractive to me" if plaintiff successfully proved its pled facts. (Ex. 12, Delaware Transcript, at 58:8-59:9.)

Cisco respectfully renews its motion to stay this case now that the Delaware court has rejected Monarch's Delaware contract law arguments—the same contract law arguments that formed the basis for Monarch's opposition—and affirmed that rescission is not only a viable, but a probable remedy in the event it finds liability. A stay could save significant judicial resources as the Court has not yet addressed the parties' soon-to-be-filed summary judgment and *Daubert* briefing. The parties also have yet to exchange pre-trial materials. Jury selection is currently scheduled for June 7, 2021. (D.I. 123.)

## V.   LEGAL STANDARDS

### A.   Staying Proceedings

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936) (citations omitted). "The district court has the inherent power to control its own docket, including the power to stay proceedings." *Soverain,* 356 F. Supp. 2d at 662 (citations omitted). District courts typically weigh three factors when deciding whether to grant a stay: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Id*. (hereafter, the "*Soverain* factors"). "Essentially, courts determine whether the benefits of a stay outweigh the inherent costs based on these factors." *EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05-CV-81, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006). The *Soverain* factors help determine whether to stay a case in light of

8

a parallel proceeding to decide patent ownership. *See, e.g.*, *Rmail*, 2014 WL 11394910, at *5–6; *RPost*, 2014 WL 12703780, at *2–3.

### B. Patent Owner Standing

"In order to have standing, the plaintiff in an action for patent infringement must be a 'patentee' pursuant to 35 U.S.C. §§ 100(d) and 281, or a licensee who holds 'all substantial rights' in the patent." *H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002) (citations omitted). "[T]he plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit." *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (citations and emphasis omitted). "If the original plaintiff lacked Article III initial standing . . . the jurisdictional defect cannot be cured after the inception of the lawsuit." *Abraxis Bioscience, Inc. v. Navita LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010) (citations omitted).

## VI. ARGUMENT

All three *Soverain* factors favor a stay. *First*, a stay pending the Delaware Action—a risk known to Monarch before it filed suit—will not unduly prejudice Monarch where the parties do not compete, Monarch seeks only monetary damages, and a stay presents no tactical advantage to Cisco. *Second*, the Delaware Action can simplify every issue in this case by depriving Monarch of initial standing, and rendering this case moot. *Third*, Cisco originally moved for a stay at the case's inception—before a scheduling conference or the start of discovery. And this Court will have to expend significant resources resolving the parties' summary judgment and *Daubert* motions, as well as other pre-trial issues as it prepares the case for trial. All that effort will be for naught if the Delaware court grants rescission.

### A. A Stay Will Not Unduly Prejudice Monarch Or Provide Cisco With A Tactical Advantage.

Monarch faces no undue prejudice here. Monarch knew of the Delaware Action and assumed the risk of a stay when it filed its complaint. Indeed, Monarch's complaint explicitly acknowledges that the Delaware Action can deprive it of ownership of the Asserted Patents:

> On September 6, 2019, **Slingshot Technologies, LLC, filed a complaint in Delaware Chancery Court seeking to rescind the sales transaction that led to Acacia's (and subsequently Monarch's) acquisition of the Asserted Patents.** Acacia vigorously denies the allegations in the Slingshot lawsuit, and **Monarch's ownership of the patents is intact until such point, if ever, that Slingshot succeeds on the merits of its lawsuit**. Nevertheless, out of an abundance of caution, Monarch herein discloses the existence of that lawsuit.

(D.I. 1 ¶ 6 (emphasis added).) Monarch was aware of that uncertainty and filed this action in the face of that uncertainty. Thus, Monarch would not be unduly prejudiced by a stay here. *See, e.g.*, *Rmail*, 2014 WL 11394910, at *6 (finding that plaintiff was not unduly prejudiced by a stay when it was "fully aware of the co-pending California cases . . . [and] the serious implications those cases would have on the issue of patent ownership in the present actions").[3]

Additionally, any alleged prejudice resulting from Monarch's status as a patent owner does not rise to the level of ***undue*** prejudice. Monarch does not sell any products or otherwise compete with either defendant. *See, e.g.*, *Spa Syspatronic, AG v. Verifone, Inc.*, No. 2:07-CV-416, 2008

---

[3] Courts often find that "indefinite" stays cause no undue prejudice. *See, e.g.*, *Constellation IP, LLC v. The Allstate Corp.*, No. 5:07-CV-132, 2008 WL 4787625, at *3 (E.D. Tex. May 12, 2008) (granting "indefinite" stay and finding no undue prejudice); *see also Motorola Mobility, Inc. v. TiVo, Inc.*, No. 5:11-CV-53, 2011 WL 13196554, at *2–3 (E.D. Tex. July 6, 2011) (finding no undue prejudice staying case through parallel proceeding). In any event, Slingshot alleges that Acacia delayed resolution of its ownership dispute. In particular, in the Delaware Action, Slingshot alleged that "Acacia was acting in bad faith, using delay tactics and making patently false statements and assertions to stall Slingshot while internally taking no steps to propose or reach a resolution," including by filing "a declaratory judgment action in the U.S. District Court for the Central District of California, in July 2019, without providing any notice or indication of its actions and without serving the complaint on Slingshot." (Ex. 9, SAC, ¶ 113.)

10

WL 1886020, at *2, *4 (E.D. Tex. Apr. 25, 2008) (granting stay and finding that non-competitor status weighed against undue prejudice). To date, Monarch has no website or LinkedIn page, and does not appear to have any real-world presence. Tellingly, Monarch seeks only monetary damages, and no injunction or equitable relief. (D.I. 1 at 53–54.) *See, e.g.*, *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058, 2015 WL 1069111, at *3 (E.D. Tex. Mar. 11, 2015) (granting stay and finding patent owner not prejudiced where "it does not compete with [defendant] and that monetary relief will be sufficient to compensate it for any injury to its patent rights"). And Monarch's interest in its alleged patent rights alone is insufficient to demonstrate **undue** prejudice. The inherent delay resulting from a stay "is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion." *NFC Tech.*, 2015 WL 1069111, at *2. Indeed, staying the case would more likely **prevent** the parties from suffering prejudice. *See, e.g.*, *RPost Holdings*, 2014 WL 12703780, at *3 (granting stay and finding that looming "litigation involving a patent with underlying issues of unresolved ownership" creates a risk of undue prejudice).

A stay pending the Delaware Action does not offer any tactical advantage to Cisco. Cisco originally moved to stay this case on March 31, 2020, the same day that it answered Monarch's complaint. Monarch opposed that motion asserting that rescission was not available in Delaware as a matter of law. In parallel, Monarch also sought to dismiss the rescission claims in Delaware. On February 12, 2021, the Delaware court denied Monarch's motion to dismiss the rescission claims in the Delaware Action. (Ex. 11, Delaware Order.) On Friday, February 19, 2021, Cisco obtained a copy of the transcript from that Delaware hearing, confirming that rescission would be the Delaware Court's preferred remedy if Slingshot proves its case. (Ex. 12, Delaware Transcript,

11

at 58:8-59:9.) And just two business days later, Cisco files the present motion. The timing of Cisco's motion is not tactical in any way.

In short, granting a stay will not cause Monarch to suffer undue prejudice and will not provide Cisco with a tactical advantage. Accordingly, the first *Soverain* factor weighs heavily towards a stay.

### B.   The Delaware Action Can Simplify Every Issue In This Case By Determining That Monarch Has No Standing To Bring Suit.

The Delaware Action can moot this case in its entirety. Monarch allegedly obtained all of the Asserted Patents from its parent company ARG. (D.I. 1 ¶ 5.) But Slingshot seeks to rescind ARG's, as well as Monarch's, ownership of the Asserted Patents in the first place. (Ex. 9, SAC, at 83.) The Delaware court's rescission of ARG's patent purchase agreement would divest Monarch of standing to maintain this case. *See, e.g., H.R. Techs.*, 275 F.3d at 1384. Monarch cannot cure this initial standing defect. *See Abraxis*, 625 F.3d at 1364.

If the Delaware Action deprives Monarch of standing, any resources expended by the Court and the parties will be completely wasted. For that reason, courts routinely grant stays for co-pending actions challenging the ownership of asserted patents. *See, e.g., Rmail*, 2014 WL 11394910, at *6–*7 (granting stay pending related state and bankruptcy actions calling into question ownership of the asserted patents); *RPost Holdings*, 2014 WL 12703780, at *3 (same); *Optimal Golf Sols.*, 2009 WL 10733424, at *1 (granting stay pending bankruptcy proceeding calling into question ownership of asserted patents).

In opposition, Monarch argued that "rescission *ab initio* of Acacia's purchase of the patents—cannot be ordered by the Delaware Court, as a matter of black letter Delaware law." (D.I. 64 at 6.) But now the Delaware court has fully rejected Monarch's assertions by confirming that Slingshot's requested rescission is proper under Delaware contract law. (Ex. 12, Delaware

12

Transcript, at 58:8-59:9.) Indeed, the Delaware court indicated that depriving Monarch of ownership of the Asserted Patents is the most practical and thus the most "attractive" remedy. (Ex. 12, Delaware Transcript, at 58:24-59:20.)

In short, the Delaware Action's potential to eliminate this entire case strongly supports granting a stay before the Court and the parties expend more resources on this matter and Monarch's basis for opposition has been nullified.

### C. Significant Proceedings Remain In This Action.

Monarch filed its complaint on January 21, 2020, and Cisco originally moved to stay this case on March 31, 2020, the same day that it answered Monarch's complaint. "[T]he proper time to measure the stage of litigation" is at "the date of the filing of the motion to stay." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). And the Court "must accord some weight to the timing" of Cisco's initial motion—filed on the same day Cisco answered Monarch's complaint—when weighing this factor. *See e-Watch Inc. v. Apple, Inc.*, No. 2:13-CV-1061, 2015 WL 12915668, at *3 (E.D. Tex. Mar. 25, 2015). When the initial motion to stay was filed in this litigation, "there remain[ed] a significant amount of work ahead for the parties and the court." *Norman IP Holdings, LLC v. TP-Link Techs.*, Co., No. 6:13-CV-384, 2014 WL 5035718, at *3 (E.D. Tex. Oct. 8, 2014).

Although the case has progressed through expert discovery, there remains a significant amount of work ahead for the parties and the Court. Jury selection in this case is scheduled to occur on June 7, 2021, which is over three months from now, and dispositive and *Daubert* motions have not yet been filed. Under such facts, a stay makes sense here. *See, e.g.*, *Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:16-CV-505, 2017 WL 7051628, at *2 (E.D. Tex. Oct. 25, 2017) (granting renewed motion to stay in which jury selection was scheduled to occur less than two months after the renewed motion); *see also Ramot at Tel Aviv Univ. Ltd. v. Cisco*

13

*Sys., Inc.*, No. 2:19-CV-225, 2021 WL 121154, at *2 (E.D. Tex. Jan. 13, 2021) (granting renewed motion to stay "with discovery complete, pretrial briefing submitted, and jury selection impending [because] there remain significant resources yet to be expended by the parties, including at the pretrial conference and preparations leading up to an actual trial of this case."). And when a related judicial action can wholly deprive the Plaintiff of standing, like here, courts have even stayed cases "on the cusp of trial." *See, e.g.*, *Rmail*, 2014 WL 11394910, at *6.

Thus, the procedural posture of this case favors a stay.

## VII. CONCLUSION

Cisco respectfully renews its request that this Court grant a stay pending resolution of the Delaware Action.

| | | |
|---|---|---|
| Dated: February 23, 2021 | By: | /s/ Michael R. Rhodes with permission by Michael E. Jones |

                                                       Tamir Packin (*pro hac vice*)
tpackin@desmaraisllp.com
Lindsey Miller (*pro hac vice*)
lmiller@desmaraisllp.com
Raymond Habbaz (*pro hac vice*)
rhabbaz@desmaraisllp.com
William N. Yau (*pro hac vice*)
wyau@desmaraisllp.com
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400
Fax: (212) 351-3401

Michael R. Rhodes (*pro hac vice*)
mrhodes@desmaraisllp.com
DESMARAIS LLP
101 California Street
San Francisco, CA 94111
Tel: (415) 573-1900
Fax: (415) 573-1901

*Lead Counsel for Defendant*
CISCO SYSTEMS, INC.

Michael E. Jones (State Bar No. 10929400)
mikejones@potterminton.com
POTTER MINTON, P.C.
110 North College, Suite 500
Tyler, TX 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

*Local Counsel for Defendant*
CISCO SYSTEMS, INC.

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for movant has conferred with opposing counsel in a good faith attempt to resolve the matter without court interference, and this motion is opposed. More specifically, counsel met and conferred on February 23, 2021 for approximately 45 minutes. Mr. Steven Shepard represented plaintiff Monarch. Mr. Michael Rhodes represented defendant Cisco.

*/s/ Michael R. Rhodes with*
*Permission by Michael E. Jones*
