# EXHIBIT 3

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Lasinski, Michael J.                              February 17, 2021

                                                              1

```
        IN THE UNITED STATES DISTRICT COURT

         FOR THE EASTERN DISTRICT OF TEXAS

                 MARSHALL DIVISION



MONARCH NETWORKING

SOLUTIONS LLC,

        Plaintiff,              CIVIL ACTION NO.

    v.                          2:20-CV-00015-JRG

CISCO SYSTEMS, INC.,

        Defendant.
- - - - - - - - - - - - - - - - -



 ** HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY **


    VIDEOTAPED DEPOSITION of MICHAEL J. LASINSKI,

taken remotely, on February 17, 2021 commencing at

9:10 a.m. eastern time, before Jeffrey Benz, a

Certified Realtime Reporter, Registered Merit

Reporter and Notary Public within and for the

State of New York.
```

**14**

1  Godfrey LLP on behalf of Monarch Networking to
2  determine the measure of monetary relief that may
3  be appropriate to compensate Monarch if liability
4  is found against Cisco.
5      And then you list the patents.  Right?
6   A.  That is accurate, yes.
7   Q.  And then in the next paragraph you say,
8  My investigation into potential recovery of
9  monetary relief began with the necessary
10 assumption that liability would be found against
11 Cisco for the alleged infringement of the patents
12 in suit.
13      Right?
14  A.  That is what it said, you read it
15 correctly.
16  Q.  And so you assume, for the purposes of
17 your analysis, that the patents in suit are valid,
18 and infringed, right?
19  A.  Correct.
20  Q.  And you don't have any opinions on
21 infringement.  Is that right?
22  A.  Correct.
23  Q.  And you don't have any opinions on
24 validity; is that right?
25  A.  Correct.

**15**

1   Q.  So if the jury finds that the patents in
2  suit are all invalid, there will be no damages
3  due, right?
4   A.  Well, my understanding is that that's a
5  legal conclusion, but based on history and other
6  cases that I've worked on, that's what I found.
7   Q.  Okay.  Maybe -- how about this one?  If
8  the jury finds that the patents are not infringed,
9  there will be no value, right?
10  A.  Well, I wouldn't say no value.  My
11 understanding is that there wouldn't be an award
12 of damages, but ultimately, that's a legal
13 conclusion.
14  Q.  Right, there wouldn't be award of
15 damages, but even if you were to try to assess the
16 value to Cisco, if Cisco is not using the patents
17 in suit for non-infringement purposes, the
18 negotiation would result in a zero value because
19 they're not using it, right?
20  A.  For -- for -- Cisco would not have to
21 pay damages, that is accurate, yes.
22  Q.  Oh, God, I'm sorry.  I understand my --
23 the lack of clarity of my question.
24      So just to be clear, because I think I
25 said it very inartfully, until I caught on to the

**16**

1  distinction that you were making, if Cisco -- if
2  the jury finds that Cisco is not using the patents
3  in suit, in other words, is not infringing, then
4  the damages would be zero.  Is that right?
5   A.  Again, you know, my understanding is
6  that's always a legal conclusion.  But that's not
7  inconsistent with what I've seen in -- in cases
8  and my history of being a damages expert.
9   Q.  I mean from an -- an economic
10 perspective, that's true as well, in terms of --
11 if Cisco is not using the patent, not infringing
12 the patents in suit, the value of the patents in
13 suit to Cisco would be zero in terms of the
14 negotiation.  Right?
15  A.  They would not have to pay for them,
16 that's right.
17  Q.  And you're -- you're aware that there is
18 an issue in this case about whether or not the
19 patents need to be licensed under RAND, R-A-N-D,
20 terms, right?
21  A.  I'm aware that there is that issue, yes.
22  Q.  And you do not have any opinion on
23 whether or not the RAND obligations apply in this
24 case.  Right?
25  A.  I have not made an opinion on that.

**17**

1   Q.  You did your damages analysis in this
2  case assuming that RAND does apply.  Is that
3  right?
4   A.  That is accurate, yes.
5   Q.  You're not a lawyer; is that right?
6   A.  That is correct.
7   Q.  And you're not a technical expert in
8  this case; is that right?
9   A.  That is correct.
10  Q.  You're not an expert on the technology
11 of MAP-T, M-A-P dash T.  Is that right?
12  A.  That is accurate.
13  Q.  And you're also not an expert on MAP-E.
14 Is that right?
15  A.  Again, I'm not a technical expert on
16 MAP-E.  I do have economic standards -- opinions
17 on that, but I'm not a technical expert.
18  Q.  Right.  And you also are not a technical
19 expert in V -- VPLS LSM.  Right?
20  A.  That is right.  Correct.
21  Q.  And so to the extent there's technical
22 discussions in your report about the various
23 technologies, you're really relying on Dr. Walker
24 for the technical explanation; is that right?
25  A.  For the most part, that is correct, yes.

HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY

Lasinski, Michael J.                                      February 17, 2021

6 (Pages 18 to 21)

---

**Page 18**

1  Q.  Now, what you've done in this case is
2  present your opinion as to what the appropriate
3  level of damages are.  Right?
4  A.  Correct.
5  Q.  Now, you're familiar with 35 U.S.C. 284?
6  A.  Yes.
7  Q.  And so, that -- what that says is, Upon
8  finding for the claimant, the Court shall award
9  the claimant damages adequate to compensate for
10 the infringement, but in no event less than a
11 reasonable royalty for the use made of the
12 invention by the infringer, together with
13 interests and costs as fixed by the Court.
14     You're -- you're familiar with that
15 statute?
16 A.  I am, yes.
17 Q.  And so, the analysis that you applied in
18 this case is consistent with the requirements of
19 Section 284; is that right?
20 A.  That is correct.
21 Q.  And within Section 284, what you're
22 focused on for this case is figuring out a
23 reasonable royalty for the use made of the
24 invention by the alleged infringer, right?
25 A.  That is correct.  I have a reasonable

---

**Page 19**

1  royalty analysis.
2  Q.  Now, to reach your reasonable royalty
3  analysis, you consider several materials from the
4  case, and I -- just for clarity, I've sort of
5  moved on to Section 4, "Information Considered."
6  A.  Is there a question there?
7  Q.  I'm sorry, let me say it again.  I was
8  trying to tell you -- tell you where I was and ask
9  the question at the same time.  So let me try it
10 again.
11     In considering -- or let me say it --
12 say it differently.
13     In forming your opinions in this case,
14 you considered information relevant to the matter.
15 Is that right?
16 A.  That is correct.
17 Q.  And in Section 4 of your report, which
18 we've marked as Exhibit 1, you have a section
19 describing the types of information that you
20 considered, right?
21 A.  Correct.
22 Q.  And you also have an exhibit to your
23 report, I believe it's Appendix B, where you set
24 out to list all the information that you
25 considered in coming up with your opinions in this

---

**Page 20**

1  case.  Right?
2  A.  That is correct.
3  Q.  And so to the ex-- sorry.
4  A.  It is Appendix B.
5  Q.  To -- to the extent a document is not
6  cited in your report or listed in Appendix B, fair
7  to say that you did not consider that document in
8  forming your opinions in this case?
9  A.  Yes.  With two exceptions.
10 Q.  Okay.  What were the exceptions?
11 A.  Well, now I have Doctor -- or
12 Mr. Reading's report.  So -- I -- I did not have
13 that at the time of my report, but I do have that
14 now.
15 Q.  Okay.
16 A.  And then I have also received a RAND
17 report from -- that was developed by Monarch.
18 Q.  Is that Dr. Walker's RAND report or --
19 or Mr. Resnick's RAND report?
20 A.  I think it's Mr. Resnick.
21 Q.  Okay.
22     Have either of those two reports, the
23 additional information that you've received, have
24 either of those caused you to want to change or
25 revise the opinions that you've laid out in

---

**Page 21**

1  Exhibit 1, which is your report?
2  A.  No.
3  Q.  You agree that in determining the
4  monetary relief in this case, the -- your economic
5  theory of damages must be tethered to the fact of
6  this case.  Right?
7  A.  Yes.
8  Q.  So other than -- in -- in paragraph 13,
9  you say, It is important to note that the opinions
10 and conclusions contained in this report are based
11 on the information that has been made available to
12 me to date.
13     Do you see that?
14 A.  Yes.
15 Q.  Other than the two additional reports
16 that you mentioned, Mr. Reading's report and
17 Mr. Resnick's report, is there any additional
18 information that you considered beyond what's
19 listed in Appendix B to your report?
20 A.  No.
21 Q.  Is it fair to say that the entirety of
22 your opinions in this case are contained within
23 your expert report, which is Exhibit 1?
24 A.  My affirmative opinions, yes.
25 Q.  You're drawing a distinction between

---