**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| MONARCH NETWORKING SOLUTIONS LLC,<br><br>     Plaintiff,<br><br>  v.<br><br>CISCO SYSTEMS, INC.,<br><br>     Defendant. | Civil Action No. 2:20-CV-00015-JRG<br><br>**JURY TRIAL DEMANDED** |

**<u>DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE CERTAIN
OPINIONS OF DEFENDANT'S EXPERT MARCUS READING</u>**

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ........................................................................................................1

STATEMENT OF FACTS ...........................................................................................1

I.      CISCO'S DOCUMENT PRODUCTION AND DISCOVERY RESPONSES ..................1

II.     MR. READING'S REBUTTAL OPINIONS ......................................................2

        A.     Mr. Reading's Internet Service Provider Opinion And Sample Calculation...........3

        B.     Mr. Reading's Edge Router Opinion And Sample Calculation. .............................4

        C.     Mr. Reading's Right-To-Use Opinion. ...................................................4

        D.     Mr. Reading's Discussion Of Cisco             .................................5

LEGAL STANDARD....................................................................................................5

ARGUMENT ...............................................................................................................6

I.      THE COURT SHOULD NOT EXCLUDE MR. READING'S INTERNET
        SERVICE PROVIDER, EDGE ROUTER, AND RIGHT-TO-USE OPINIONS
        BECAUSE NO DISCOVERY VIOLATION OCCURRED AND THE *BARRETT*
        TEST DOES NOT SUPPORT EXCLUSION. .......................................................6

        A.     No Discovery Violation Has Occurred Because Mr. Reading's Internet
             Service Provider, Edge Router, And Right-To-Use Opinions Rely On
             Information Produced By Cisco During Fact Discovery.......................................6

             1.     Mr. Reading's Internet Service Provider Opinion And Sample
                   Calculation. ...........................................................................7

             2.     Mr. Reading's Edge Router Opinion And Sample Calculation. .................8

             3.     Mr. Reading's Right-To-Use Opinion. ......................................9

        B.     The *Barrett* Test Does Not Support Excluding Mr. Reading's Internet
             Service Provider, Edge Router, And Right-To-Use Opinions.............................10

II.     MR. READING'S INTERNET SERVICE PROVIDER, EDGE ROUTER, AND
        RIGHT-TO-USE OPINIONS ARE RELIABLE.............................................................12

III.    THE COURT SHOULD NOT EXCLUDE MR. READING'S OPINIONS
        RELATING TO THE
        AGREEMENTS BECAUSE THEY ARE TECHNOLOGICALLY AND

## TABLE OF CONTENTS (cont'd)

**Pages**

ECONOMICALLY COMPARABLE TO THE HYPOTHETICAL
NEGOTIATION. ...........................................................................................................13

CONCLUSION.....................................................................................................................15

## **TABLE OF AUTHORITIES**

**Pages**

**CASES**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.,*
    694 F.3d 1312 (Fed. Cir. 2012)......................................................................... 15

*Barrett v. Atl. Richfield Co.,*
    95 F.3d 375 (5th Cir. 1996) .............................................................................. 5, 6

*Daubert v. Merrell Dow Pharm., Inc.,*
    509 U.S. 579 (1993)........................................................................................... 5, 6

*DiSalvatore v. Foretravel, Inc.,*
    No. 9:14-CV-00150-KFG, 2016 WL 7742996 (E.D. Tex. May 20, 2016) ..................... 11

*Finjan, Inc. v. Secure Computing Corp.,*
    626 F.3d 1197 (Fed. Cir. 2010)............................................................................ 6

*Genband US LLC v. Metaswitch Networks Corp.,*
    No. 2:14-CV-33-JRG-RSP, 2016 WL 125503 (E.D. Tex. Jan. 9, 2016)................... 10, 13

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.,*
    No. 2:16-CV-134-JRG-RSP, 2017 WL 2869344 (E.D. Tex. Apr. 19, 2017)................... 5

*Huawei Techs. Co. v. Yiren Huang,*
    No. 4:17-CV-00893, 2019 WL 2267045 (E.D. Tex. May 28, 2019)......................... 11, 12

*i4i Ltd. P'ship v. Microsoft Corp.,*
    598 F.3d 831 (Fed. Cir. 2010)............................................................................ 15

*Jones v. Harley-Davidson, Inc.,*
    No. 2:14-CV-694-RWS-RSP, 2016 WL 5395952 (E.D. Tex. Sept. 27, 2016) ............... 11

*Knight v. Kirby Inland Marine Inc.,*
    482 F.3d 347 (5th Cir. 2007) ............................................................................. 5

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137 (1999)............................................................................................ 5

*Moore v. Hernandez,*
    No. 2:17-CV-00531-JRG, 2018 WL 2670403 (E.D. Tex. Mar. 6, 2018)....................... 12

*Munoz v. Orr,*
    200 F.3d 291 (Fed. Cir. 2000)............................................................................ 8

*Personalized Media Commc'ns, LLC v. Apple, Inc.,*
    No. 215CV01366JRGRSP, 2021 WL 662237 (E.D. Tex. Feb. 20, 2021) ..................... 13

## TABLE OF AUTHORITIES (cont'd)

**Pages**

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013).................................................................................... 13

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)...................................................................................... 6

*United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*,
    No. 2:18-CV-00366-JRG-RSP, 2019 WL 7041725 (E.D. Tex. Dec. 20, 2019)........... 6, 15

*VirnetX v. Cisco Sys. Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)................................................................................... 6

*Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*,
    No. 2:14-CV-203-JRG-RSP, 2015 WL 11110650 (E.D. Tex. Dec. 3, 2015)............. 10, 14

## RULES

Fed. R. Evid. 403 ..................................................................................................................... 6

Fed. R. Evid. 702 ..................................................................................................................... 5

Fed. R. Evid. 703 ..................................................................................................................... 13

## INTRODUCTION

Monarch's motion to strike Mr. Reading's testimony is based on the false notion that the facts and data he relied on were untimely disclosed.  This is simply untrue.  Cisco produced this information during fact discovery and nothing prevented Monarch, or its damages expert, Mr. Lasinski, from conducting the exact same analysis as Mr. Reading.  They simply chose not to do so.  Thus, the *Barrett* test does not apply, nor does it merit exclusion of Mr. Reading's opinions.  Moreover, there is nothing unreliable or prejudicial about Mr. Reading's opinions as he relied on the data Cisco produced and conversations with individuals Cisco identified as the most knowledgeable.  The Court should deny Monarch's motion.

## STATEMENT OF FACTS

### I.      CISCO'S DOCUMENT PRODUCTION AND DISCOVERY RESPONSES

During fact discovery, Cisco produced sales data and market reports and provided discovery responses that identified the people most knowledgeable about the accused products and information relating to how Cisco monetizes the accused MAP functionality.

Cisco retained ███████████████████████████ to gather the relevant Cisco sales data for production and to educate himself on that data to serve as Cisco's corporate representative regarding the files he generated.  (Ex. 2[1], 18:8–19; Ex. 6, 8:7–9:6.)

(*See, e.g.*, Ex. 11.)

(*See, e.g.*, Ex. 10.)

---

[1] Exhibit numbers reflect the exhibits attached to the Declaration of Lindsey E. Miller.

**RESTRICTED – ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Cisco identified ███████████████████████████████████ ████ as the persons most knowledgeable about the ███████████████████ ████ respectively.  (Ex. 7, at 52–54.)  Monarch chose to depose ███████████████ ████ Monarch's damages expert, Mr. Michael Lasinski, relied on their testimony and on Cisco's sales data in forming his opinions in this case.  (Ex. 4, Appendix B.)  Mr. Reading similarly relied on their testimony and on Cisco's sales data, but he also relied on conversations he had with them while preparing his rebuttal report.  Mr. Reading disclosed these conversations in his expert report.

Cisco also identified sales data in response to Monarch's interrogatory requesting Cisco's "means of pricing, charging for, or otherwise monetizing MAP-E, MAP-T, NAT64 and related functionalities," and stated:



(Ex. 8, at 7; Ex. 9, at 61–70.)

## II.     MR. READING'S REBUTTAL OPINIONS

On February 9, 2021, Cisco's damages expert, Mr. Marcus Reading, provided opinions in rebuttal to Mr. Lasinski's January 12, 2021 opinions.  Monarch is seeking to strike three of Mr. Reading's rebuttal opinions (those on internet service provider, edge router, and right-to-use) and

**RESTRICTED – ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

his criticism of Mr. Lasinski's dismissal of three Cisco settlement agreements ███████████

███████████████████  (Mot. (D.I. 200) at 1.)

A.     **Mr. Reading's Internet Service Provider Opinion And Sample Calculation.**

Monarch acknowledges that the technology claimed in the '844 Patent only provides value for IPv6 domains that are "owned, controlled or administered by an Internet Service Provider." (*See* D.I. 145 at 1.)  But Mr. Lasinski did not make any effort to limit his royalty ask to internet service provider sales and instead includes within his damages base sales of routers that would be not "owned, controlled, or administered by an Internet Service Provider."  (D.I. 160 at 11.)[2]

---

[2] Mr. Lasinski  opines ███████████████████████████████████████████████
████████████████████████████████████████ (Ex. 5, at 189:6–10.)
██████████████████████████████████████████ .g., Ex. 1, ¶¶ 12(8)(b), 104 n.158, 187 n. 248, 285(2), 319, 322, 324.)

**RESTRICTED – ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

(Ex. 1, ¶¶ 310–12.)

### B.   Mr. Reading's Edge Router Opinion And Sample Calculation.

Mr. Reading also appropriately criticizes Mr. Lasinski in rebuttal for including all sales in his damages base, irrespective of whether the product is used on the edge of a network (where one can potentially make use of the accused MAP functionality) or used in the core of a network (where IPv4 to IPv6 interoperability is not relevant).  Mr. Reading's edge router opinion accounts for the fact that the accused MAP functionality has no value in the core of a network and instead only has value at a network edge—*i.e.*, where IPv6 to IPv4 interoperability could potentially take place.

In addition to criticizing Mr. Lasinski for making no effort to apportion his damages base to address the edge versus core router issue, in rebuttal, Mr. Reading provided an exemplary

(Ex. 1, ¶¶ 313–15.)

### C.   Mr. Reading's Right-To-Use Opinion.

In his opening expert report, Mr. Lasinski misinterprets Cisco's interrogatory response and the underlying documents cited to assert that ████████████████████████████████ ████████████████████████████ (Ex. 4, ¶ 118 n.184.)  Mr. Reading merely disagrees with Mr. Lasinski's unsupported interpretation and notes ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ (Ex. 1, ¶¶ 298(3), 308, 309, 322.)  Mr. Reading further supports his opinion of lack of use with quoted testimony of numerous Cisco witnesses.  (Ex. 1, ¶¶ 187–95.)

RESTRICTED – ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**D.     Mr. Reading's Discussion Of Cisco Settlement Agreements**

Mr. Reading appropriately disagrees with Mr. Lasinski's dismissal of Cisco's ███████

████████████████████████████████████████ (Ex. 1, ¶¶ 127–37, 263–64, 278, 289.)

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████ (Ex. 1, ¶¶ 263–66.)

## LEGAL STANDARD

"The Fifth Circuit applies a four-factor [*Barrett*] test to determine the admissibility of expert testimony relying on information that was not timely disclosed: (1) the explanation, if any, for the party's failure to provide discovery; (2) the prejudice to the opposing party of allowing the expert to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the expert evidence." *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-134-JRG-RSP, 2017 WL 2869344, at *2 (E.D. Tex. Apr. 19, 2017) (citing *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996)).

Federal Rule of Evidence 702 "imposes a special obligation upon a trial judge to 'ensure that any and all [expert] testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).  "Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93).

Because "[e]xpert evidence can be both powerful and quite misleading . . . the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control

RESTRICTED – ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citations omitted); *see* Fed. R. Evid. 403.  Thus, "[f]or an expert to introduce other licenses, agreements, negotiations, or the like to support the expert's theory surrounding the hypothetical negotiation, the Federal Circuit requires a showing of comparability.  A showing of comparability requires showing that the other data point is comparable, both technologically and economically, to the hypothetical negotiation between the parties." *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366-JRG-RSP, 2019 WL 7041725, at *1 (E.D. Tex. Dec. 20, 2019) (citing *VirnetX v. Cisco Sys. Inc.*, 767 F.3d 1308, 1330 (Fed. Cir. 2014); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010)).

## ARGUMENT

I.   **THE COURT SHOULD NOT EXCLUDE MR. READING'S INTERNET SERVICE PROVIDER, EDGE ROUTER, AND RIGHT-TO-USE OPINIONS BECAUSE NO DISCOVERY VIOLATION OCCURRED AND THE *BARRETT* TEST DOES NOT SUPPORT EXCLUSION.**

Monarch relies on Rule 37 and the four-factor test in *Barrett v. Atlantic Richfield Co.* to argue that the Court should strike Mr. Reading's opinions regarding service provider, edge router, and right-to-use sales in their entirety because they rely on facts and data that were not timely disclosed.  (Mot. (D.I. 200) at 1–11 (applying the four factor test in *Barrett*, 95 F.3d at 380).  This is simply untrue.  Cisco produced the information Mr. Reading relied on during fact discovery. Therefore, no discovery violation has occurred and the four-factor test of *Barrett* is inapplicable. Moreover, the *Barrett* test does not merit excluding Mr. Reading's opinions.

   A.   **No Discovery Violation Has Occurred Because Mr. Reading's Internet Service Provider, Edge Router, And Right-To-Use Opinions Rely On Information Produced By Cisco During Fact Discovery.**

Monarch seeks to strike the entirety of Mr. Reading's internet service provider, edge router, and right-to-use opinions for relying on facts and data that were untimely disclosed.  Monarch is

**RESTRICTED – ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

mistaken.  In each instance, Mr. Reading relies on facts and data produced by Cisco during fact

discovery.  As no discovery violation has occurred, the *Barrett* test is inapplicable.

      1.     **Mr. Reading's Internet Service Provider Opinion And Sample Calculation.**

Monarch's argument in support of striking Mr. Reading's internet service provider opinion

and sample calculation is predicated on the inaccurate premise that Cisco provides 

This is simply

untrue.  Mr. Reading's internet service provider opinion and sample calculation are derived from

Cisco's sales data.  Mr. Reading relies on his own analysis of Cisco's sales data, conversations

with

analysis of Cisco's sales data

, among others, in forming his internet service provider

opinion and generating his sample calculation.  (Ex. 2, at 169:3–15; Ex. 1, ¶¶ 310–12.)

Thus, Monarch seeks to strike Mr. Reading's internet service provider opinion not because

it did not have the sales data, but because Mr. Lasinski did not bother to analyze it to remove non-

internet service provider sales.  Mr. Lasinski could have—but chose not to—review Cisco's

detailed sales data, identify which Cisco customers are internet service providers (using publicly

available data from the U.S. Federal Communications Commission or other public organizations

that maintain lists of internet service providers in the United States) and calculate the proportion

of sales made to those customers.  In fact, Mr. Reading explained to Monarch's counsel that it

could have conducted the same analysis:

7

**RESTRICTED – ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

███████████████████████████ (Ex. 2, at 172:16–20.)  Monarch, and Mr. Lasinski,

simply chose not to do so.

Although there is nothing particularly complex or confusing about the analysis, Mr.

Reading appropriately questioned ███████ regarding his methodology and the specific values

he obtained, unlike in *Munoz v. Orr*.



(Ex. 2, at 170:7–171:2); *compare with Munoz v. Orr*, 200 F.3d 291, 301–02 (Fed. Cir. 2000)

(holding the district court did not err in excluding expert's report and testimony where the expert

adopted methods that were not in accord with experts in the field, made unsubstantiated

assumptions, admitted ignoring other key variables, and relied on compilations of data without

verification).

### 2.    Mr. Reading's Edge Router Opinion And Sample Calculation.

Monarch's argument in support of striking Mr. Reading's edge router opinion and sample

calculation is based on the false notion that Cisco did not produce market reports during fact

discovery.  (Mot. at 6.)  In fact, Cisco ██████████████████████████████

████████████████████████████████████████████████████

████████████████ (*E.g.*, Ex. 10.)  Mr. Reading simply chose to rely on conversations with ████████

**RESTRICTED – ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

███████████████████████████████████████████████████████

███████████████████████████ (Ex. 1, ¶¶ 313–15.)

Thus, Monarch seeks to strike Mr. Reading's edge router opinion not because it did not

have the market reports, but because Mr. Lasinski did not bother to analyze them ████████

██████   Mr. Lasinski could have—but chose not to—████████████████████████

█████████████████████████

### 3.   Mr. Reading's Right-To-Use Opinion.

Monarch's argument in support of striking Mr. Reading's right-to-use opinion is predicated

on the erroneous view that Cisco did not disclose ████████████████████████

███████████████████████ (Mot. at 8.)  In fact, Cisco's interrogatory response clearly

states that Cisco █████████████████████████████████████████

███████████████████████████████████████████████████

████████████████ (Ex. 9, at 61–70.)

Monarch's argument that Cisco was required to explicitly "indicate that the only way

customers could use MAP was via such right-to-use [product IDs]" is disingenuous.  *First*, as their

name implies,




*Second*, Monarch's

expert, Mr. Lasinski, makes an incorrect assumption without any underlying support, that the

customers of ██████████████ can freely use the MAP functionality ██████████████

████████████████████████████████████████████████████

█████████ (Ex. 4, ¶ 118 n.184.)  Monarch was free to test that assumption during fact discovery.

But Monarch chose to disregard the evidence and have its expert close his eyes to the evidence in

RESTRICTED – ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

the case and state—without any testimonial support



But that is incorrect—and Cisco never so stated.  Mr. Reading simply relies on the information in Cisco's interrogatory response and his conversations with ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and explains that Mr. Lasinski's assumption is incorrect and has no basis.[3]  Monarch improperly seeks to strike Mr. Reading's disagreement with Mr. Lasinski so that Mr. Lasinski's testimony can go unrebutted.

Therefore, as no discovery violation has occurred, the *Barrett* test is inapplicable.

**B.    The *Barrett* Test Does Not Support Excluding Mr. Reading's Internet Service Provider, Edge Router, And Right-To-Use Opinions.**

Even if the *Barrett* test did apply—which it does not, none of the *Barrett* factors supports exclusion.  *First*, Cisco could not have provided Mr. Reading's rebuttal opinions and sample calculations to Mr. Lasinski's analyses earlier because they directly respond to Mr. Lasinski analyses that Monarch disclosed for the first time on January 12, 2021.  Indeed, expert discovery is the proper vehicle to provide sample calculations that an opposing expert could have—and should have—made, but chose not to.  *See ZiiLabs Inc., Ltd. v. Samsung Elecs. Co.*, No. 14-CV-203, 2015 WL 6690403, at *2 (E.D. Tex. Nov. 2, 2015) (denying motion to strike testimony disclosed for the first time in rebuttal because it was responsive to the theory disclosed in opening expert report).  Notably, Mr. Reading does not rely on any of his rebuttal opinions or sample calculations that Monarch seeks to strike in his affirmative analysis.  Instead, Monarch seeks to

---

[3] Although Monarch criticizes Mr. Reading's failure to recall all of the materials he relied on in forming right-to-use opinions during his deposition (Mot. at 8-9), Mr. Reading's report makes clear that he is relying on Cisco's interrogatory responses and a conversation ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 1, ¶¶ 298, 303, 308–09.)  "The details of [Mr. Reading's] conversations ▮▮▮▮▮▮▮ (and the clarity with which he recalls them) may be fertile ground for cross examination"; but are not a basis for exclusion. *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-CV-33-JRG-RSP, 2016 WL 125503, at *3 (E.D. Tex. Jan. 9, 2016).

RESTRICTED – ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

strike Mr. Reading's rebuttal opinions and sample calculations because Mr. Reading—who had only several weeks to digest Mr. Lasinski's analyses and respond—relied in part on conversations with knowledgeable Cisco witnesses.  But those witnesses were disclosed to Monarch during discovery and almost all were deposed by Monarch.  Moreover, the information that they provided to Mr. Reading was not new; instead, it was information that Monarch equally could have derived from the underlying data produced in this case.  There is nothing wrong with Mr. Reading's reliance on Cisco witnesses to explain data produced in discovery.

*Second*, Mr. Reading's disclosure of rebuttal opinions and sample calculations that directly respond to Mr. Lasinski's analyses does not prejudice Monarch.  Monarch, and its expert, Mr. Lasinski had all of the evidence necessary to conduct the same analyses and chose to ignore it. *Jones v. Harley-Davidson, Inc.*, No. 2:14-CV-694-RWS-RSP, 2016 WL 5395952, at *2 (E.D. Tex. Sept. 27, 2016) (finding that the moving party could not claim prejudice because "[w]hether a late disclosure is prejudicial depends on whether the expert testimony was unexpected and left the other party without adequate opportunity to prepare for it" (citation omitted)).  After receiving Mr. Reading's opinions, Monarch took expert discovery on those opinions. *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2019 WL 2267045, at *3 (E.D. Tex. May 28, 2019) ("Under these circumstances, the Court agrees . . . that any prejudice due to late-disclosed expert opinion should be negated if the opposing party was aware of the opinion and subsequently took the expert's deposition[.]"); *DiSalvatore v. Foretravel, Inc.*, No. 9:14-CV-00150-KFG, 2016 WL 7742996, at *4 (E.D. Tex. May 20, 2016) ("[Movant] still had the opportunity to depose the designated experts to gather further information.").  And Monarch is free to cross-examine Mr. Reading regarding those opinions and calculations at trial. *Moore v. Hernandez*, No. 2:17-CV-00531-JRG, 2018 WL

2670403, at *3 (E.D. Tex. Mar. 6, 2018) ("[The moving party] do[es] not point to any specific prejudice that could not be remedied by, among other things . . . vigorous cross examination.")

*Third*, as Monarch has not been prejudiced, a continuance to cure prejudice is unnecessary.

*Fourth*, Mr. Reading's rebuttal opinions and sample calculations are extremely important for the jury to understand the magnitude of Mr. Lasinski's overinclusion. *See Huawei Techs. Co.*, 2019 WL 2267045, at *3; *Moore*, 2018 WL 2670403, at *3. Mr. Lasinski assumes all sales of all of the accused products infringe because according to him they are capable of infringement. But Mr. Lasinski fails to determine the value of that capability in light of the customer and use-cases for those sales. Mr. Reading's internet service provider and edge router opinions, and their corresponding sample corrections, indicate that Mr. Lasinski's ███████████████████████ ████████████████████████████████████████████████████ (Ex. 1, ¶¶ 311, 315.) Mr. Reading's right-to-use opinion criticizes Mr. Lasinski for assuming—without any support—that ██████████████████████████████████████████████ ██████████████████████████████████████████ Without providing these rebuttal opinions and sample calculations, the jury will not know the extent of Mr. Lasinski's over-inclusion. Therefore, the *Barrett* test does not support exclusion.

## II.   MR. READING'S INTERNET SERVICE PROVIDER, EDGE ROUTER, AND RIGHT-TO-USE OPINIONS ARE RELIABLE.

For each of his opinions Mr. Reading relies, in part, on conversations with knowledgeable fact witnesses and a technical expert, and in some cases their understanding and analysis of documents produced during fact discovery. This reliance does not make Mr. Reading's opinions unreliable. To the contrary, damages experts frequently rely on conversations with persons knowledgeable about the technology and underlying data and on analyses conducted by others who are qualified to conduct them. *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-

RESTRICTED – ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

CV-33-JRG-RSP, 2016 WL 125503, at *3 (E.D. Tex. Jan. 9, 2016) (holding reliance on conversations with employees does not provide a basis to strike testimony); *Personalized Media Commc'ns, LLC v. Apple, Inc.*, No. 215CV01366JRGRSP, 2021 WL 662237, at *3 (E.D. Tex. Feb. 20, 2021) (declining to exclude expert testimony when such testimony was based upon a conversation with a technical expert); *see also* Fed. R. Evid. 703 (allowing an expert to rely on information he has been made aware of or personally observed "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject[.]").[4] That is precisely what Mr. Reading did here.  (*See* Ex. 7, at 52–54.)  Indeed, Mr. Lasinski similarly relied on testimony by Cisco's fact witnesses and conversations with Dr. Walker, Monarch's technical expert, and analyses of Cisco's sales data conducted by others.  (Ex. 4, Appendix B; *id.* ¶ 7, 18 n.7; Ex. 5, at 13:14–16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 17:21–25 (explaining he relied on Dr. Walker for the technical discussions in his report).)

### III.    THE COURT SHOULD NOT EXCLUDE MR. READING'S OPINIONS RELATING TO THE AGREEMENTS BECAUSE THEY ARE TECHNOLOGICALLY AND ECONOMICALLY COMPARABLE TO THE HYPOTHETICAL NEGOTIATION.



Monarch attempts to compare Mr. Lasinski's improper reliance on the ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Mr. Reading's proper reliance on ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But the two scenarios are simply ***not*** comparable.

---

[4] Monarch's invocation of *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.* is inapposite.  There, the expert relied on documents without knowing their provenance and made assumptions that were not supported by the documents he relied on.  711 F.3d 1348, 1373 (Fed. Cir. 2013) ("When asked whether the provider of the documents 'found [them] off the internet,' Dr. Troxel responded, 'I can only assume so.' … [T]he document relied on by Dr. Troxel does not specify the nature of the shipments, nor does it provide any reliable link which might indicate that the shipped phones included chargers.")

**RESTRICTED – ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

On the one hand, Mr. Lasinski admits that ████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████  (D.I. 160 at 12-15.)  Nor

could he, because they are not comparable.  (D.I. 160 at 13-14.)  Instead, Mr. Lasinski simply

includes them for the █████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████Ex. 5,

at 218:9–219:9.)

On the other hand, Mr. Reading states that █████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████  (Ex. 1, ¶¶ 127–37, 263–64, 278,

289.)  Mr. Reading discusses Dr. Jeffay's analysis of the patents-at-issue in the agreements and

how they are technologically comparable to the patents-in-suit.  (Ex. 1, ¶¶ 128, 133, 138; Ex. 3, ¶¶

782–95.)  Contrary to Monarch's contention, technological comparability does not require the

products at issue in the agreements to be the same as the products accused in this case.  (Mot. at

14.)  Instead, technological comparability relates to a comparison of the patents-at-issue in the

agreements and the patents-in-suit in the case.  *E.g.*, *Ziilabs*, 2015 WL 11110650, at *4 ("The test

for technological comparability does not require [Defendant] to show that 'the [] patents [in the

agreement] cover the accused [] technology[.]'").

he explains that they are economically comparable because they include

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

-----------------------------------

█████████████████████████████████████████████████████████████████████

14

RESTRICTED – ATTORNEYS' EYES ONLY
FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

. (Ex. 1, ¶¶ 263–64, 278.)  The degree of comparability is a "factual issue[] best addressed by cross examination and not by exclusion" where "[t]he jury [is] entitled to hear the expert testimony and decide for itself what to accept or reject." *ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010).

Moreover, in contrast to Mr. Lasinski's repeated invocation of ██████████ ██████████ Mr. Reading made no such statement regarding ████████. ████████ (Ex. 2, at 253:11–255:23.)

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's motion to strike Mr. Reading's opinions.

---

[6] ██████████████████████████████████ *United Servs. Auto. Ass'n*, 2019 WL 7041725, at *1.

**RESTRICTED – ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Dated: March 15, 2021

By:   */s/ Lindsey E. Miller, with permission*
      *Michael E. Jones*
      Tamir Packin (*pro hac vice*)
      tpackin@desmaraisllp.com
      Lindsey Miller (*pro hac vice*)
      lmiller@desmaraisllp.com
      Taeg Sang Cho (*pro hac vice*)
      tcho@desmaraisllp.com
      Raymond Habbaz (*pro hac vice*)
      rhabbaz@desmaraisllp.com
      William N. Yau (*pro hac vice*)
      wyau@desmaraisllp.com
      DESMARAIS LLP
      230 Park Avenue
      New York, NY 10169
      Tel:  (212) 351-3400
      Fax:  (212) 351-3401

      Michael R. Rhodes (*pro hac vice*)
      mrhodes@desmaraisllp.com
      DESMARAIS LLP
      101 California Street
      San Francisco, CA 94111
      Tel: (415) 573-1900
      Fax: (415) 573-1901

      *Lead Counsel for Defendant*
      *CISCO SYSTEMS, INC.*

      Michael E. Jones (State Bar No. 10929400)
      mikejones@potterminton.com
      Patrick C. Clutter (State Bar No. 24036374)
      patrickclutter@potterminton.com
      POTTER MINTON, P.C.
      110 North College, Suite 500
      Tyler, TX 75702
      Tel:  (903) 597-8311
      Fax:  (903) 593-0846

      *Local Counsel for Defendant*
      *CISCO SYSTEMS, INC.*

**RESTRICTED – ATTORNEYS' EYES ONLY**
**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing sealed document and all attachments thereto

are being served via email on all counsel of record on this March 15, 2021.

<u>/s/*Michael E. Jones*</u>
Michael E. Jones

**<u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant

to the Protective Order (D.I. 62) and the Amended Protective Order (D.I. 149) entered in this case.

<u>/s/*Michael E. Jones*</u>
Michael E. Jones